**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore)**

CHARM CITY HEMP, LLC
d/b/a CHARM CITY HEMP                               Case No: 25-1744
4411 Underwood Road
Baltimore, Maryland 21218
(Baltimore City)

and

PEACE OF SUNSHINE, LLC
d/b/a PEACE OF SUNSHINE
2 Mellor Avenue
Catonsville, Maryland 21228
(Baltimore County)

and

STRAF, LLC
d/b/a PEACE OF CROFTON
1268 Route 3 South
Unit 2
Crofton, Maryland 21114
(Anne Arundel County)

and

DANIEL SIMMONDS
2529 Mountain Road
First Floor
Pasadena, Maryland 21122
(Anne Arundel County)

and

ENDO PRODUCTIONS COMPANY, LLC
103 South Clay Street
Marietta, Pennsylvania 17457
(foreign corporation)

and

J. WYAND, INC.
d/b/a SIMPLE PLEASURES

1

23 Mesa Drive
Falling Waters, West Virginia 25419
(foreign corporation)

and

SOUTH MOUNTAIN MICROFARM, LLC
6138 Clevelandtown Road
Boonsboro, Maryland 21713
(Washington County)

and

MARYLAND HEMP COALITION, INC.
6144 Clevelandtown Road
Boonsboro, Maryland 21713
(Washington County)

and

CANNON APOTHECARY, LLC, d/b/a
CANNON BALL DISPENSARY
1983 Foxwood Lane
Lusby, Maryland 20657
(Calvert County)

and

THE UNLIMITED EXPERIENCE
HOLDING COMPANY, LLC, d/b/a
THE SOUTHERN MARYLAND EXPERIENCE
24502 Three Notch Road, Unit C
Hollywood, Maryland 20636
(St. Mary's County)

and

IRA COOKE
202 Bentley Court
Hagerstown, Maryland 21740
(Washington County)

*PLAINTIFFS*

2

v.

GOVERNOR WES MOORE, in his
Official Capacity as
Governor of Maryland
100 State Circle
Annapolis, Maryland 21401

*Serve On:*
*Anthony Brown, Esquire*
*Attorney General of Maryland*
*200 St. Paul Place*
*Baltimore, Maryland 21202*

and

MARYLAND CANNABIS
ADMINISTRATION
849 International Drive,
Fourth Floor
Linthicum, Maryland 21090

*Serve On:*
*Anthony Brown, Esquire*
*Attorney General of Maryland*
*200 St. Paul Place*
*Baltimore, Maryland 21202*

and, in their official capacities:

TABATHA ROBINSON, Executive Director
Maryland Cannabis Administration
849 International Drive, Fourth Floor
Linthicum, Maryland 21090

and

MARYLAND ALCOHOL, TOBACCO AND
CANNABIS COMMISSION
1215 East Fort Avenue
Suite 300
Baltimore, Maryland 21230

and

JEFFREY A. KELLEY, in his official capacity,

as Executive Director of
the Maryland Alcohol, Tobacco, and Cannabis
Commission
1215 East Fort Avenue
Suite 300
Baltimore, Maryland 21230

and

THE STATE OF MARYLAND
80 Calvert Street
Room 442
Annapolis, Maryland 21401

*Serve On:*
*Anthony Brown, Esquire*
*Attorney General of Maryland*
*200 St. Paul Place*
*Baltimore, Maryland 21202*

and

RICHARD WORLEY, in his official capacity,
as Commissioner of the Baltimore City
Police Department
601 East Fayette Street
Baltimore, Maryland 21202

*DEFENDANTS*

## COMPLAINT FOR INJUNCTIVE RELIEF, MONETARY DAMAGES, DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION, AND DEMAND FOR JURY TRIAL ON ALL MATTERS TRIABLE BY JURY

Now Come the Plaintiffs, by and through undersigned counsel, Nevin L. Young and Carlos M. Recio, and sue the Defendants, and state:

## Introductory Statement

1.     The Plaintiffs in this case are a coalition of persons who either are or were involved in farming, manufacturing, distribution, retail sales, or consumption of Federally legal

4

hemp products. These legal products have been sold for many years in thousands of retail shops throughout Maryland and most of the nation. As part of the implementation of Maryland's Recreational Cannabis Act, which went into effect on July 1, 2023, an unjust monopoly was bestowed on Cannabis license holders with no familiarity with these products, and the right to sell these products was stripped from the Plaintiff retailers, which also deprives the Plaintiff farmers of a large part of their marketing and distribution network, and depriving Plaintiff consumers of the ability to buy these formerly legal products from the trusted retailers of their choice.

2.    The Plaintiffs obtained some relief under State law claims filed in the Circuit Court for Washington County, Maryland, in the form of a preliminary injunction based not upon Federal law, but upon claims under the Maryland Declaration of Rights.[1] The issuance of that preliminary injunction has been appealed by the State of Maryland, and the decision upon appeal is still pending.[2] Since the time of the issuance of the preliminary injunction by the Washington County Circuit Court, the State of Maryland has passed new legislation[3] and taken new enforcement actions in an attempt to further the monopoly interests of those who have received a cannabis license.  This Maryland law violates the Plaintiffs' rights to equal protection under the law, violates the Supremacy Clause, violates the dormant commerce clause as established by Federal law, and also constitutes an unlawful taking under Federal law.

### The Parties

3.    The Plaintiff MARYLAND HEMP COALITION, INC., is a 501(c)(6) Maryland non-profit coalition formed for the benefit of farmers of hemp plants used in the manufacture of

---

[1] *Maryland Hemp Coalition, Inc., et al. v. Wes Moore, et al.,* Case No. C-21-CV-23-000348
[2] *Wes Moore, et al. v. Maryland Hemp Coalition, Inc., et al.*, Appellate Court of Maryland, Case No. ACM-REG-1590-2023.
[3] Senate Bill 215, as signed by Governor, effective July 1, 2025

hemp related products, including products containing hemp and hemp derived cannabinoids.

4.    The MARYLAND HEMP COALITION, INC., was formed as a member organization to forward the cause of farmers of hemp in the State of Maryland. The hemp grown by these farmers is used in many of the products sold by the various retailer Plaintiffs in this case. The diminution of the business of those retailers will also diminish the business of the hemp farmers of Maryland, contrary to the mission of the MARYLAND HEMP COALITION, INC.

5.    The Plaintiff CHARM CITY HEMP, LLC, d/b/a CHARM CITY HEMP, is a Maryland registered Limited Liability Company in good standing, and a retailer of Federally lawful hemp products sold in Baltimore, Maryland.

6.    The Plaintiff ENDO PRODUCTIONS COMPANY is a Pennsylvania Limited Liability Company in good standing, which is a producer and distributor of THC infused beverages and a participant in the marketing and distribution of such beverages in the State of Maryland, but not a licensed Maryland dispensary or processor.

7.    The Plaintiff J. WYAND, INC., D/B/A SIMPLE PLEASURES, is a West Virginia corporation with a Maryland registered trade name and a retail store doing business in Hagerstown, Maryland, as a seller of hemp derived products. The Plaintiff J. WYAND, INC., D/B/A SIMPLE PLEASURES, has sold these products for several years and has developed a customer base of at least several hundred repeat customers. The Plaintiff is a retailer of hemp products but is not a State of Maryland cannabis licensee.

8.    The Plaintiff SOUTH MOUNTAIN MICROFARM, LLC, is a Maryland agricultural business that grows hemp plants, processes hemp plants into finished products, and distributes those products to retailers throughout the State of Maryland. SOUTH MOUNTAIN

MICROFARM, LLC also runs a retail business for direct sales to consumers. The Plaintiff SOUTH MOUNTAIN MICROFARM is also a developer of hemp derived beverages containing THC, but is not a State of Maryland Cannabis licensee.

9.      The Plaintiff PEACE OF SUNSHINE, LLC, d/b/a PEACE OF SUNSHINE, is a Maryland LLC in good standing, that is a retailer of hemp products in Catonsville, Maryland, but is not a Maryland cannabis licensee.

10.     The Plaintiff STRAFF, LLC, d/b/a PEACE OF CROFTON, is a Maryland LLC in good standing, that is a retailer of hemp products in Crofton, Maryland, but is not a Maryland cannabis licensee.

11.     The Plaintiff CANNON APOTHECARY, LLC, d/b/a CANNON BALL DISPENSARY, is a Maryland LLC in good standing, that is a retailer of hemp products in Lusby, Maryland, but is not a Maryland cannabis licensee.

12.     The Plaintiff THE UNLIMITED EXPERIENCE HOLDING COMPANY, LLC, d/b/a THE SOUTHERN MARYLAND EXPERIENCE, is a Maryland LLC in good standing, that is a retailer of hemp products in Hollywood, Maryland, but is not a State of Maryland cannabis licensee.

13.     The Plaintiff IRA COOKE is an individual who is a retired attorney and a cancer survivor who has suffered from digestive and appetite problems since the time of suffering esophageal cancer several years ago. He first became aware of the medicinal properties of Hemp Products during that ordeal, and has been a regular customer of the retail store operated by J. WYAND, INC., d/b/a SIMPLE PLEASURES. As a consumer of the product in question, he values friendly customer service, knowledgeable staff, and competitive pricing, which he has found at retail hemp establishments but has not found at state licensed cannabis dispensaries. He

asserts his right as a consumer to buy from the retail stores of his choosing, rather than of the State of Maryland's choosing.

14.     The Defendants are the Governor of Maryland, as the executive ultimately responsible for executing the laws of the State of Maryland, the Maryland Cannabis Administration, the Executive Director of the Maryland Cannabis Administration, the Maryland Alcohol, Tobacco and Cannabis Commission, the Executive Director of that Commission, in his official capacity, the Commissioner of the Baltimore City Police Department, and various other persons who either have regulatory authority under the State of Maryland's cannabis licensing laws, or who have taken unlawful action in furthering the enforcement of the State of Maryland's cannabis licensing regime.

## Jurisdiction and Venue

15.     This Complaint raises Federal questions under the Equal Protection and Due Process clauses of the United States Constitution, the Takings Clause of the United States Constitution, and what has become known through common law as the Dormant Commerce Clause of the United States Constitution, which are Federal questions under 28 USC §1331, and also under 28 USC § 1983, for deprivation of civil rights of individuals under color of state law.

16.     Venue is proper under 28 U.S.C. §1391.

## Procedural and Factual Background

17.     In 2014, the State of Maryland established a medical marijuana law allowing dispensaries to distribute Federally illegal marijuana/cannabis to those demonstrating a medical need. This was done even though the possession and sale of cannabis was at that time, and remains, a violation of Federal law. At that time, states implementing a medical cannabis regime were largely relying upon a Memorandum as to Federal prosecutorial discretion known

as the "Cole Memorandum," a copy of which is attached as Exhibit A. The Cole Memorandum however was formally rescinded by Attorney General Jeff Sessions in 2018.

18.    In 2018, the passage of the Agriculture Improvement Act (commonly known as the 2018 Farm Bill), Public Law 115-334, changed the legal landscape related to the plant known as Cannabis Sativa dramatically.

19.    Up until the time of the passage of the 2018 Farm Bill, almost all derivatives of the Cannabis Sativa plant were considered to be Federally illegal "marijuana" and were illegal under both Federal and most state laws, including the law of the State of Maryland. Congress recognized the changing attitudes toward hemp and cannabis, the industrial and medical utility of plants containing certain derivatives of the Cannabis Sativa plant, and the wide variation in potency in terms of THC levels found in that plant.  Accordingly, Congress determined that unless a Cannabis Sativa plant tested above a certain threshold of Delta-9 THC (more than 0.3%) within 30 days prior to harvest, that plant would be deemed hemp rather than cannabis, and would not be unlawful under Federal law. (hereinafter sometimes "Hemp Products.")

20.    The 2018 Farm Bill further authorized states to implement their own agricultural programs related to the production of Hemp Products. If a state did not implement its own agricultural program, then that state would be considered to have defaulted to be governed by the Federal laws as set forth in the 2018 Farm Bill.

21.    The State of Maryland, in 2020, did implement its own agricultural plan for hemp production, which largely mirrored the 2018 Farm Bill in terms of definitions and testing standards, and went into effect on November 1, 2020.

22.    From the time of passage of the 2020 Maryland hemp legislation, up until the passage of the Cannabis Reform Act in 2023, the State of Maryland had no laws regulating the

sale or distribution of any THC products derived from hemp with less than 0.3% Delta 9 THC. Under Maryland law prior to 2023, such Hemp Products with less than 0.3% Delta 9 THC, were defined as industrial hemp rather than as marijuana. It is hemp, rather than cannabis (which has much higher levels of Delta-9 THC) that is grown by the Plaintiff farmers in this case.

23.    Most of the Hemp Products legally sold by the Plaintiff retailers prior to July 1, 2023, were products mostly comprised of Delta 8 THC or other types of THC, rather than Delta 9 THC, which is generally recognized as the most potent form of THC. Again, prior to the passage of Maryland's Cannabis Reform Act, those products were legal under both State and Federal law.

24.    Prior to July 1, 2023, the State of Maryland had a statewide licensing scheme for distributing medical cannabis, derived from cannabis plants with THC content greater than 0.3%, and had operated such a scheme since its implementation in 2014. That scheme was formerly regulated by the Natalie M. LaPrade Medical Cannabis Commission, which is now simply the Maryland Cannabis Administration.

25.    During the 2023 legislative session, the General Assembly addressed the issue of legalizing recreational cannabis, only if said cannabis were to be purchased at a dispensary licensed by the State of Maryland.

26.    The 2023 Cannabis Reform Act passed by the Maryland General Assembly purports to license a select few businesses to sell products derived from sources in excess of 0.3% Delta 9 THC, in other words, products that would previously be unlawful to distribute under the then-existing laws of Maryland prohibiting the distribution or sale of cannabis. See Md. Code Ann. Crim. Law §5-602(b)(1). Those are also products that have always been and continue to be illegal under Federal law. In fact, were the Federal statutes to be interpreted and

enforced strictly to the letter, many officials of the State of Maryland could be indicted as drug kingpins.

27.     In addition, it remains a serious crime in Maryland to distribute cannabis or cannabis derived products without a license granted by the Maryland Cannabis Administration, that is, products that are derived from a plant that rises above the 0.3% Delta 9 THC threshold as defined in Md. Code Ann. Agriculture §14-101, having been tested thirty or fewer days pre-harvest. In that event, the plant is no longer defined as industrial hemp and is considered cannabis. See Md. Code Ann. Crim. Law §5-101(r)(1)(2).

28.     The laws of the State of Maryland as to what constitutes industrial hemp remain unchanged, with industrial hemp still being defined as a plant with less than 0.3% Delta 9 THC by dry weight, as tested within 30 days pre-harvest, under Maryland law.

29.     However, the 2023 Cannabis Reform Act for the first time prohibited the sale or distribution of previously lawful hemp derived products (other than certain tinctures). under the following circumstances:

Md. Code Ann. Alc. Bev. §36-1102 provides, in relevant part:

> (b) (1) A person may not sell or distribute a product intended for human consumption or inhalation that contains more than 0.5 milligrams of tetrahydrocannabinol per serving or 2.5 milligrams of tetrahydrocannabinol per package unless the person is licensed under § 36-401 of this title and the product complies with the:
>
> (i) manufacturing standards established under § 36-203 of this title;
> (ii) laboratory testing standards established under § 36-203 of this title; and
> (iii) packaging and labeling standards established under § 36-203 of this title.
>
> (2) A person may not sell or distribute a product described under paragraph (1) of this subsection to an individual under the age of 21 years.
>
> (c) A person may not sell or distribute a cannabinoid product that is not derived from naturally occurring biologically active chemical constituents.

(d) (1) Notwithstanding subsection (b) of this section and subject to paragraph (2) of this subsection, it is not a violation of this section for a person to sell or distribute a hemp-derived tincture intended for human consumption that contains:

(i) a ratio of cannabidiol to tetrahydrocannabinol of at least 15 to 1; and

(ii) 2.5 milligrams or less of tetrahydrocannabinol per serving and 100 milligrams or less of tetrahydrocannabinol per package.

(2) To sell or distribute a hemp-derived tincture under this subsection, a person must provide, as required by the Administration, tincture samples for the purpose of testing to determine chemical potency and composition levels and to detect and quantify contaminants.

(e) A person who violates subsection (b) of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000. . . .

30.    Almost all of the products sold by the Plaintiff retailers, while being derived from hemp and not marijuana, and therefore lawful under Federal Law pursuant to the 2018 Farm Bill, cannot meet the new standard for maximum milligrams of THC imposed by the new Md. Code Ann. Alc. Bev. §36-1102, under the new Cannabis Reform Act.

31.  Accordingly, any sale of Hemp Products exposes the Plaintiff retailers to the risk of a fine of at least $5000 under the new law, even though the products are hemp derived and not derived from cannabis according the definitions implemented by both Federal and State law, and were lawfully being produced and sold under both Federal law and Maryland law  prior to July 1, 2023.

32.    In order to continue to lawfully market or sell the Hemp Products they have devoted themselves to lawfully selling, the Plaintiff retailers are required under Maryland's Cannabis Reform Act to obtain a recreational cannabis license under the Act, which is, for reasons set forth below, almost impossible to obtain.

33.    The Plaintiff retailers risk being forced out of business by a new licensing requirement that is monopolistic, violative of equal protection of the laws, interferes with interstate commerce in violation of the United States Constitution, and is a taking of property

without due process, as set forth below:

## The Irrational Licensing Scheme

34.    The typical and facile response to most complaints that a product once sold without a license now requires a license to sell, is that the complainant should "get a license." However, that is virtually impossible.

35.    First, the licensing scheme implemented in 2023 provides, at Md. Code Ann. Alc. Bev. §36-401(d), in relevant part, that:

> (d) The Administration may not issue more than the following number of licenses per type, including licenses converted under subsection (b)(1)(ii) of this section:
> (1) for standard licenses:
> (i) 75 grower licenses;
> (ii) 100 processor licenses; and
> (iii) 300 dispensary licenses;
> (2) for micro licenses:
> (i) 100 grower licenses;
> (ii) 100 processor licenses; and
> (iii) 10 dispensary licenses;
> (3) for incubator space licenses, 10 licenses; and
> (4) for on-site consumption licenses, 50 licenses.
> (e)
> (1) This subsection applies to all licenses, including licenses converted under subsection (b)(1)(ii) of this section.

36.    Therefore, in a monopolized licensing scheme thinly disguised as being focused upon "social equity", the number of new licenses to dispense previously illegal cannabis products or previously legal hemp products in Maryland was limited to 300 even after allowing for the conversion of existing medical dispensaries,[4] whereupon the remaining licenses are subject to a second round of a "lottery" system, and in order to even participate in the first round of lottery license issuance at all, which has already occurred, prospective licensees were

---

[4] Upon information and belief, there were already at least 100 medical cannabis dispensaries in Maryland, and all or almost all of them have converted to recreational dispensaries.

required to meet certain factors purported to address "social equity concerns" as follows:

37.     Md. Code Ann. Alc. Bev. §36-101(ff) states:

"Social equity applicant" means an applicant for a cannabis license or
cannabis registration that:
(1) has at least 65% ownership and control held by one or more
individuals who:
(i) have lived in a disproportionately impacted area for at least 5 of the 10
years immediately preceding the submission of the application;
(ii) attended a public school in a disproportionately impacted area for at
least 5 years; or
(iii) for at least 2 years, attended a 4-year institution of higher education in
the State where at least 40% of the individuals who attend the institution
of higher education are eligible for a Pell Grant; or
(2) meets any other criteria established by the Administration.[5]

38.     Meanwhile, a "disproportionately impacted area" is defined as in the same
section, at Md. Code Ann. Alc. Bev. §36-101(r) as "a geographic area identified by the office of
social equity that has had above 150% of the state's 10-year average for cannabis possession
charges."

39.     The social equity factors and geographical factors considered for social equity
status have no rational relationship to any public safety or health concerns, and the Plaintiffs
submit they were designed to placate political criticism about the legalization of cannabis and
poorer and minority persons being shut out of the market, but hypocritically designed to restrict
the market, keeping prices high and therefore maximizing the State's tax revenue from product
sales. In other words, a classic prohibited monopoly, with the State as a willing profiteer in a
system in flagrant violation of Federal law.

40.     Even if social equity concerns were a valid reason to establish a licensing system

---

[5] Even those who agree with Justice Holmes that a statute is constitutional unless it makes one
want to vomit, would likely find this language unconstitutional. This language means the
Administration has blanket authority to grant social equity consideration to anyone with the
proper persuasive power, (in other words, lobbying or political connections) standing behind
their applications.

restricting licensing to those who qualified under the definitions promulgated by the State of Maryland, there is and was no reasonable relation between the factors in the Act defining a "social equity applicant" and the redress of any past grievances. Nor is there any reason to believe that these facially unlawful preferential treatments would potentially benefit more than a tiny fraction of the persons adversely affected, given the maximum number of licenses permitted under the Act.

41.    Even if the General Assembly had a good faith belief that there were social equity concerns to be addressed through this Act, and even if such preferences were lawful, privileging the lucky few with licenses to sell cannabis awarded by lottery would do nothing to help the many thousands who were presumably injured in the past. In fact, it worsens the injury by shutting them out from competing in the market, while doing nothing to assure that those applying for licenses as social equity applicants are in need of any such assistance.

42.    The General Assembly has approached this matter as though it were awarding a government contract. It is not. It is providing for the issuance of licenses to operate a private although regulated business. The Defendants have no right to arbitrarily restrict the number of licenses, to engage in discriminatory considerations as to the award of those licenses, or to award these licenses by lottery.

43.    Even if a lottery distribution and the numerical cap upon licenses to be issued were defensible, the factors as applied by the State in this case were not and are not: under the present scheme as implemented by the Act, the adult child of a Governor or Senator who attended a college where 40% of the students receive Pell Grants could enter into the cannabis lottery as a social equity applicant, whereas an impoverished person who served time in jail for possession of cannabis and has suffered financial hardship as a result of their criminal record,

and happens to live just over the border in a disfavored zip code, would be shut out.

44.    The Social Equity System devised by the State of Maryland was not designed to be fair. It was designed to be unfair and arbitrary, and to limit the number of applicants, in order to inflate the value of such licenses to many millions of dollars.

45.    The present licensing regime as implemented by the Cannabis Reform Act means that one must obtain a Maryland Cannabis license to sell any consumable hemp product even though such Hemp Products are legal under Federal law. The dispensaries licensed by the State of Maryland sell both Hemp Products and Cannabis products. Thus, the new licensing regime excludes those who were previously in the business of selling only Federally legal Hemp Products.

46.    Upon the implementation of the new licensing scheme in the summer of 2023, prior to the grant of an injunction by the Circuit Court for Washington County in October of 2023, the already licensed medical marijuana dispensaries were the only businesses allowed to sell Federally legal Hemp Products in the State of Maryland.

47.    In short, the State of Maryland swept up all of the Hemp Products market share of the Plaintiffs and others similarly situated, and handed it to a select group of businesses already licensed by the State of Maryland, with no opportunity for the Plaintiffs or others similarly situated to obtain licenses before this happened, and with the Plaintiffs having little or no prospect of obtaining a license in the first round of "social equity" licensing.

48.    It should be noted that in the past, the Federal courts have often exercised abstention due to the Federally illegal nature of cannabis. However, the Plaintiffs herein do not seek a license for the purpose of selling Cannabis, nor any Federally illegal product. The gravamen of the complaint is that the State cannabis license is also required in order to sell

Federally legal products, and that the State has assigned a sole and exclusive right to sell those products to those who hold the State cannabis license, in unfair exclusion of the Plaintiffs and others similarly situated, and in interference with interstate commerce in Federally lawful Hemp Products.

49.     To further compound the difficulties in obtaining a license, the State of Maryland, while pretending to favor those with equitable disadvantages, demanded a $5000 fee in exchange for the right to even participate in the dispensary licensing lottery. It should be noted that this fee is due upon submission of the application, not upon approval of the license, and is not refundable if the applicant fails to obtain a license, whether by preliminary rejection for failure to meet inchoate and inscrutable standards, or for mere failure to be among the lucky few who were drawn in the lottery. The application fee in this context was no more than the purchase of a very expensive scratch ticket, with no idea what the odds would be of winning.

50.     Now that the first round of social equity applicants have already been processed, and the second round is being contemplated, the General Assembly has passed new legislation as of 2025 re-affirming that the second round of licenses, depending upon the results of a study as to whether further social equity programs are needed, will either be awarded to minority and women owned businesses by lottery, or again, by a random lottery for the remaining licenses available. (See Exhibit D, 2025 Senate Bill as passed into law, effective on July 1, 2025).

51.     A requirement that if a study shows disparate impact, the second round of licenses is to be awarded to either women or minority owned businesses is in violation of the Equal Protection Clause of the United States Constitution, especially in light of the recent decision of the Supreme Court of the United States in *Students for Fair Admissions v. Harvard*, 600 US 181 (2023).

52.     The State of Maryland also implemented two requirements that are grossly discriminatory and irrational and facilitate capricious and arbitrary decision making as to licensing in violation of the equal protection and due process rights of the Plaintiffs and other prospective applicants: the requirement that applicants submit both a diversity statement and a business plan, which will be reviewed for suitability by the Maryland Cannabis Administration, while also providing no guidance as to what is an acceptable business plan or diversity statement, and no process for appeal (or even for notice to the applicant of the reasons for rejection) if the application is rejected due to an unsuitable business plan or diversity statement. (See Exhibit E, Maryland Evaluation Worksheet).

53.     Plaintiffs further submit that a compelled "detailed diversity statement" subject to arbitrary and capricious review by a State official, other than a mere statement expressing a commitment to follow Federal and State laws as to non-discrimination, is improperly compelled speech, and is an improper and unlawful manner of evaluating an application, and is an impermissible inquiry and restriction under the Civil Rights Act of 1964.

54.     Based upon what has been stated by various State delegates and officials as to their diversity goals, Plaintiffs further submit that what the State diversity plan requirement is "fishing for" from applicants are statements that are directly in contravention of the Civil Rights Act of 1964, in other words, a commitment to racially discriminate in a manner in which the State of Maryland may approve, but at the same time, in a manner in which the Supreme Court of the United States specifically disapproves. Lacking any guidance as to the desired contents of a diversity statement other than nebulous statements as to why certain persons have been discriminated against and are disadvantaged, such a policy is a violation of the due process and equal protection rights of the Plaintiffs and others similarly situated.

55.     The "business plan" requirement fares no better. It requires a business plan which is to be arbitrarily and capriciously reviewed by a State official, with no clearly stated goals, guidelines, or record to be kept of the manner of review, while also not requiring the applicant to have a pre-existing business location, which is essential for formulating a realistic business plan. It is impossible to formulate a realistic business plan without knowing the rent, square footage, location, insurance costs, utility costs, and security costs of a business location.

56.     The licensing scheme further, for all practical purposes, restricts each applicant to one stage of the industry: growing, processing, or dispensing (retailing) the finished product. Although an applicant may apply for multiple levels of licensure, the odds of receiving or being able to participate in multiple level are extremely low, with the chances of being licensed at any one level completely arbitrary. An applicant is further limited to applying for only two levels of licensure total, so none can function at all three levels of production and/or sales, as a grower, processor and retailer, which is what the Plaintiff South Mountain Microfarm, LLC, has focused its efforts upon.

The State Court Action
A New Hope

57.     On July 24, 2023, some but not all of the Plaintiffs in this action, along with other co-plaintiffs who are not parties to this action, filed an action in the Circuit Court for Washington County, Maryland, *Maryland Hemp Coalition, Inc., et al. v. Wes Moore, et al.,* Case No. C-21-CV-23-000348, seeking a temporary restraining order, preliminary and permanent injunctive relief, a declaratory judgment, and monetary damages.

58.     The action filed in the Circuit Court for Washington County was narrowly tailored to rely only upon causes of action arising under the Maryland Declaration of Rights and the Constitution of the State of Maryland, and did not raise any Federal claims for relief.

59.     On October 12, 2023, the Hon. Brett R. Wilson of the Circuit Court for Washington County issued an Opinion and Order finding that the State of Maryland's new Cannabis licensing regime violated the equal protection rights of the plaintiffs in that case under the Maryland Declaration of Rights, and also violated the anti-monopoly provisions of the Maryland's Declaration of Rights. (Opinion and Order, attached as Exhibits B and C).

60.     From July 1, 2023 until the issuance of the preliminary injunction on October 12, 2023, thousands of retail hemp sellers who did not have a Maryland issued license to sell cannabis in Maryland were put out of the lawful business of selling Hemp Products, upon threat of a fine of $5000. During that time, the only source for Federally lawful Hemp Products in the State of Maryland was the existing network of medical marijuana dispensaries, as none of the hopeful applicants for a recreational cannabis license has yet been able to apply for such a license.

61.     In short, the entire market for lawful Hemp Products had been taken away from the Plaintiffs, with no chance for the Plaintiffs to obtain a license before the effective date of the new legislation, and given to the medical marijuana dispensaries, with a plan to further incorporate a handful of hand-picked recreational cannabis dispensaries. There was no plan to provide any licensure or relief for existing hemp retailers unless they could later successfully navigate the cannabis licensure system.

62.     The Plaintiff retailers were and are willing to be licensed as recreational cannabis dispensaries if only for the purposes of continuing to sell their Federally legal Hemp Products, but the new Act made no provision for them to receive any licenses on a provisional, expedited or priority basis, nor did it give the retailers any grace period within which to even attempt to get a license. Instead, it shut them down without recourse.

63.     But for the lottery system, numerical restrictions upon licenses, social equity and other restrictions and studies imposed by the new recreational cannabis regime, licensing could likely have been accomplished quickly and efficiently, and it would not have been required that applicants wait for months or years for a mere possibility of obtaining a license. In fact some of the Plaintiffs in this litigation did go out of business and lacked the capital to resume business, due to the interruption in business occasioned by the State's unlawful new licensing scheme.

64.     Other Plaintiffs in this action, such as South Mountain Microfarm, LLC, were forced to move operations out of the State of Maryland and refocus their marketing and sales efforts in West Virginia, due to the restrictions on sales in Maryland and the uncertain market environment.

65.     The business owned by Plaintiff Daniel Simmonds, Georgetown Hemp, was forced out of business altogether, and a planned partnership with another business failed completely due to the new licensing regime, during which he was able to produce little or no revenue for several months.

66.     The State of Maryland has appealed the preliminary injunction to the Appellate Court of Maryland, *Wes Moore, et al. v. Maryland Hemp Coalition, Inc.*, *et al.*, Case No. ACM-REG-1590-2023. That case has been argued and submitted but there has been no decision on that appeal as of this writing.

67.     Economic favoritism to the benefit of two hundred persons selected via a combination of lottery, arbitrary business plan and diversity statement requirements, and irrational purported social equity factors serves no legitimate government purpose, and is in fact violative of the rights of the Plaintiffs to due process and equal protection of the laws.

68.     The disparate treatment in this case harms the public not only by unfairly

21

excluding the Plaintiffs from the opportunity to participate as growers, processors, and sellers, but by unreasonably restricting where and from whom consumers may buy Hemp Products, and by interfering with interstate commerce such as to artificially inflate prices and control supplies of products, which is something that state delegates openly admitted to attempting to do during legislative debate on this matter. The concern was never with consumer pricing, but only with assuring that the limited licenses would have an exorbitant value to the lucky winners, and that they could ensure that price stayed artificially high to maximize revenue

69.     The Plaintiffs are willing, ready and able to apply for licenses if those licenses are granted via reasonable and objective criteria. They do not insist upon a license to the full scope of what has been granted by the State of Maryland to its favored dispensaries, which sell Cannabis in violation of Federal law. However, they do insist that if the license to sell illegal cannabis is a requirement in order to continue to sell a Federally legal product, that they must be granted a license for the limited purpose of selling the Federally legal Hemp Products they have been selling for years.

Post Injunction Actions By the State
The Empire Strikes Back

70.     Not happy with Judge Wilson's decision, the State of Maryland began various schemes to thwart the ongoing business of the Hemp Product plaintiffs, treating them unequally from the licensed cannabis dispensaries, even where both types of businesses are selling identical products and even where the state-court issued injunction has provided the hemp retailers with a right to sell their products.

Gummies and Candies

71.     The State of Maryland has long maintained that the hemp retailers, including certain Plaintiffs in this action, are selling "adulterated food products" pursuant to FDA

regulations, which gives rise to a refusal by local health departments to issue permits to hemp retailers to participate in local festivals or other activities where samples of products would be offered.

72.    This claim by the State of Maryland is based upon the fact that hemp retailers often sell products containing Federally lawful types and amounts of THC, that are delivered in the form of gummy type candies or chocolate candies. Despite the fact that the State of Maryland incorrectly claimed in the Circuit Court for Washington County that state licensed Cannabis dispensaries do not sell chocolates or gummies, it is an extremely widespread practice for state licensed Cannabis dispensaries to do exactly that.

73.    The State has recently changed its publicly available information, now stating that state licensed Cannabis dispensaries, and *only* state licensed Cannabis dispensaries, are allowed to sell what the State formerly called "adulterated food products", such as gummies, chocolates, and hemp infused beverages. The recently available information states that the amount that may be obtained by consumers, from state Cannabis dispensaries only, is up to 1.5 ounces of flower (pre-packaged flower and pre-rolls), 12 grams of concentrates (vapes, wax, shatter, budder, resin), or 750 mg of THC (***edible gummies, chocolates, beverages, capsules, tinctures). (Emphasis added). (Exhibit F, State of Maryland Cannabis Administration's "Frequently Asked Questions" website, bottom of first page).***

74.    Meanwhile, hemp retailers have been repeatedly instructed by the authorities that no "adulterated food product" may be sold by hemp retailers, and Andrew Garrison, Deputy Director of the Maryland Cannabis Administration, testified at the preliminary injunction hearing in Washington County in September of 2023 that the plaintiffs in that case were selling adulterated food products in violation of FDA regulations.

75.     Meanwhile, Plaintiff South Mountain Microfarm, LLC, was denied a permit by a local health department to participate in a local festival on the basis of the products being "adulterated foodstuffs", according to the local health department, which cited FDA regulations. At the same time, state licensed cannabis dispensaries sell chocolates, gummies, and THC infused beverages with the full approval of the Maryland Cannabis Administration, with no enforcement by local health departments, no enforcement by the Alcohol, Tobacco and Cannabis Commission, and no mention of FDA regulations or "adulterated food products."

76.     Somehow, since the time of the preliminary injunction hearing in the Washington County Circuit Court in September, 2023, the State's position, as stated under oath at that hearing, has changed, from "licensed Cannabis dispensaries don't do that", to "licensed Cannabis dispensaries do it, but you can't." (See Exhibit F, bottom of first page), authorizing sales of THC infused chocolates, candies, and cannabis infused beverages by licensed Cannabis dispensaries only). The truth is, licensed Cannabis dispensaries have always done it, and the State wants licensed dispensaries, and only licensed dispensaries, to continue to do it, regardless of whether the product is Federally legal or not.

Beverages

77.     In the last two to three years, THC infused beverages have become a very large and profitable venture for many manufacturers, distributors, and retailers of such beverages, both in the State of Maryland and in other states. The State of Maryland is permitting the sale and distribution of such beverages, but through State licensed Cannabis dispensaries only. Again, the State claims that a hemp retailer, not licensed under the dispensary law, who is selling such beverages is selling an adulterated food product, but ignores the same claim when it relates to the same sort of sales by state licensed Cannabis dispensaries. (Exhibit D, Senate Bill

215, as signed by Governor, effective July 1, 2025).

78.    Pursuant to new legislation passed by the General Assembly, which will go into effect on July 1, 2025, state licensed Cannabis dispensaries are expressly permitted to sell cannabis infused beverages, but only if those beverages are produced by a processor licensed by the State of Maryland as a cannabis licensee. This law excludes any THC infused beverages produced by any non-licensee from the marketplace, whether the producer is a hemp producer or a cannabis producer, and whether the producer is a Maryland resident or not.

79.    Plaintiffs are involved in selling and in producing THC infused beverages. Many of those beverages are presently produced by out of state, non-Maryland licensed producers, who due to the lottery, social equity, and other restraints upon trade, cannot obtain a Maryland license. Therefore the market is now to be monopolized by only those producers who can obtain a Maryland cannabis license for processing cannabis products.

80.    Most THC infused beverages are by design compliant with Federal law, since they are intended for interstate distribution and sale, and since such interstate distribution and sale would be illegal under Federal law if the product exceeded the Federal limits defining it as cannabis.

81.    Plaintiff South Mountain Microfarm, LLC, has had a THC beverage under development in its West Virginia facility that is ready to begin distribution, that is Federally legal, and wishes to distribute that product through hemp retailers in the State of Maryland. It is not allowed under present State of Maryland policies to do so, while state licensed Cannabis dispensaries may sell competing products provided by other distributors who have a Maryland license to produce cannabis products. Plaintiff Endo Production Company has an ongoing business distributing THC infused beverages and wishes to continue to compete in the

Maryland marketplace for such beverages.

82.    Meanwhile, South Mountain Microfarm, LLC, Endo Production Company, and other out of state manufacturers and distributors of THC infused beverages are restricted by the new law to distributing their products to state licensed Cannabis dispensaries, and must have an impossible-to-obtain state license to do even that, even though the products are Federally legal.

83.    The Plaintiffs in this case have now been locked out of the THC infused beverage market despite the injunction issued by the Washington County Circuit Court, due to the State of Maryland's position that only licensed Cannabis dispensaries may sell THC infused beverages, and only state licensed Cannabis product producers may produce those beverages for sale by state licensed dispensaries.

<u>Hemp Flower Products</u>

84.    The Cannabis Sativa plant is the origin of both hemp and cannabis. Depending upon the seed, the strain, the growing conditions, and the time of harvest, a Cannabis Sativa plant may ultimately either test under or over the Federal (and State) threshold of 0.3% Delta 9 THC.

85.    A plant such as Cannabis Sativa is not completely stable in its development, aging, or chemical structure. As is recognized by both the Federal government and by the State of Maryland, the chemical composition of the plant may change over time.

86.    When setting the amount of permissible Delta 9 THC at 0.3%, the authors of the 2018 Federal Farm Bill settled upon a firm definition for the time of testing based upon the time of harvest, and the State of Maryland, in the Code of Maryland Regulations, largely adopted that standard. The time for determining whether a plant is lawful hemp or unlawful cannabis, under both the Federal and State of Maryland standards, is 30 or fewer days before harvest of

the plant. See Code of Maryland Regulations (COMAR) 15.07.15.01.(B)(10). (Attached as Exhibit G).

87.     It was understood by those who implemented the testing standard that the plant, if tested earlier or later, may not test in exactly the same manner, which was precisely the reason why the 30 or fewer days preharvest standard was adopted.

88.     Both licensed Cannabis dispensaries and retail Hemp Product sellers are engaged in the sale of hemp flower products, which are Federally lawful and therefore may be obtained not just within the State of Maryland, but from sources outside the State of Maryland. Those products are provided by the grower with a certificate of analysis showing compliance with the 30 day preharvest standard, evidencing that the plant is in fact hemp and not cannabis.

89.     The State of Maryland has long argued that in order to control supplies and make sure there is no surplus of supply, that it is necessary to restrict the number of growers, processors, and retailers of Cannabis Silva products generally. However, for no rational reason, the State of Maryland also allows state licensed Cannabis dispensaries to purchase as much Federally lawful out-of-state hemp flower as they desire, which can then be entered into the state database for cannabis sales (the system is offered by a commercial vendor known as METRC, or Marijuana Enforcement Tracking Regulation and Compliance, to which the Plaintiff hemp retailers do not have access). Once the product is entered into METRC by the licensee, they can sell as much of the product as they desire. This is in complete derogation of the State's oft-stated goal of controlling the amount of supply of THC products within the Maryland market.

90.     The licensed Cannabis dispensaries are happy to sell hemp flower, because it is Federally lawful and avoids the tax problems that accompany the sale of a Federally illegal

product. Hemp flower,  is also  cheaper, more easily available, and with a wider product variety, than the other Cannabis products offered by the Cannabis dispensaries  In short, it is a better product because it was produced within a nationally distributed free market system, rather than by a rigid state-controlled system.

91.     However, the State is still intensely focused upon protecting the monopoly held by the state licensed Cannabis dispensaries while forcing the competing hemp retailers (who sell only Hemp Products) out of business. Combining excise and sales taxes, the State of Maryland takes in revenue of at least 15% of all sales by licensed Cannabis dispensaries, as well as collecting exorbitant licensing fees.

Unlawful Searches, Seizures, and<br>Enforcement Actions against Hemp Flower

92.     In order to pursue its goal of forcing hemp retailers out of business, in recent weeks, local law enforcement agencies in Baltimore City, Harford County, and the Maryland Alcohol, Tobacco and Cannabis Commission have begun a campaign of unlawful searches, seizures, and enforcement actions against hemp retailers (of course, not against licensed Cannabis dispensaries) related to the sale of hemp flower, about which they have openly boasted as though they were bravely pursuing a foreign cartel.

93.     Several hemp retailers in Baltimore City have been the subject of search and seizure warrants, and in at least one case, criminal charges for the sale of "cannabis" based upon testing of the seized product, where the testing was conducted outside of the 30 day pre-harvest regulatory window for determining whether the product is hemp or cannabis, and is therefore an inaccurate test.

94.     Some of those search and seizure warrants have been wrongfully issued based upon a mere "sight and smell" approach applied by law enforcement officers, rather than upon

any preliminary testing. Given that it is impossible to know if a Cannabis plant is lawful hemp or unlawful Cannabis by mere sight and smell, those warrants were issued without probable cause and the law enforcement officers' claims that probable cause existed were false.

95.     Upon information and belief, the involvement of the Baltimore City Police Department in these actions was not undertaken of the Department's own initiative, but was specifically requested by the Maryland Cannabis Administration and/or the Maryland Alcohol, Tobacco and Cannabis Commission as part of a new enforcement push focused upon harming the Plaintiffs and others similarly situated.

96.     In fact, during one conference call conducted by the Maryland Alcohol, Tobacco and Cannabis Commission as to the new enforcement actions, one State official stated words paraphrased as "the only problem with this is that we don't have enough warehouse space for all the products we plan to confiscate." This enforcement action has nothing to do with public safety, and everything to do with eliminating competition on behalf of the licensed Cannabis dispensaries.

97.     Despite the plain language of the regulations as to the testing timeframe for determining whether a product is hemp or cannabis under the Maryland Cannabis Reform Act and regulations enacted pursuant to that Act, the State has taken the position that if the seized product tests above 0.3% Delta 9 THC when seized, even if it passed testing under the State's own regulations and has received a certificate of analysis, it has now "converted" to cannabis and can expose the seller to criminal liability, despite the fact that the product qualified as hemp under the State's own definitions, and despite the fact that the retailer received a certificate of analysis attesting to that fact.

98.     Plaintiffs who engage in the sale of hemp flower have a reasonable apprehension

that they may be targeted for similar unlawful searches, seizures and enforcement actions, and seek an injunction and declaratory judgment that such seizures are unlawful.

<u>Unlawful Restrictions on Multiple Levels of Business Venture</u>

99.     The 2023 and 2025 Cannabis Reform Acts restrict Cannabis licensees to participation in only one market sector among three retail, processing, or growing. The Plaintiff South Mountain Microfarm, LLC, has always functioned as all three; growing hemp, processing the hemp into finished product for sale, and retail sales of the finished product. This Plaintiff does not operate at a large enough scale to constitute a vertical monopoly or to have significant market control.

100.    Under Md. Code Ann. Alc. Bev. §36-404(b)(3)(i), the MCA may not accept more than one application per license type per round per applicant, and no more than two total applications per round per applicant. Given the lottery structure, this makes the likelihood of an applicant receiving a license to operate in two areas a near impossibility, even if they overcome the other arbitrary social equity/minority business enterprise/diversity statement/business plan obstacles to obtaining a license.  Regardless, the ability to operate on all three levels is a total impossibility.

101.    For a small company, being able to operate in multiple sectors is vital to controlling supply and product output.  For example, Plaintiff  South Mountain Microfarm, LLC, is unable to purchase products for business use as a processor from state licensed Cannabis dispensaries (due to being locked out of the METRC system), unable to sell as a processor to state licensed retail dispensaries (again due to being locked out of the METRC system), and cannot be granted a retail dispensary license due to diversity and social equity limitations. The practical effect of such a system is to put hemp producers and growers out of

business in favor of state licensed "seed to sale, METRC qualified" growers, processors, and retailers, since no level of the state licensed monopoly governed by the METRC system will have any dealings with the hemp producers, processors, or retailers.

## Out of State Businesses

102.    Plaintiff J. Wyand, Inc., d/b/a Simple Pleasures, is a West Virginia corporation with business operations in the State of Maryland, that desires to continue operating in Maryland with products that are obtained in interstate commerce, including THC beverages and other products that contain THC but are Federally lawful products, that are not produced in the State of Maryland.

103.    The Maryland licensure regulations discriminate against out of state companies despite the fact that the hemp industry is a multi-billion dollar, multi-state, Federally lawful industry.   The regulations as applied further discriminate against Plaintiffs and Hemp sellers in favor of the state licensed Cannabis dispensaries because the latter are  allowed to obtain hemp products, including chocolates, gummies, and THC infused beverages, enter them into the METRC system, and sell them, while the State of Maryland actively thwarts attempts by the Plaintiffs to do so.

104.    Numerous Federal courts have found that similar  restrictions violate rights of equal protection, and violate the dormant commerce clause,[6] and the Plaintiffs ask this Court to find the same.

## On Site Consumption Licenses

105.    The 2025 Senate Bill 215 also authorizes the issuance of 15 "on site consumption licenses." There is no rational basis for limiting this number of licenses to 15, and

---

[6] *NE. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542 (1st Cir. 2022); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021)

there is no rational basis for conducting the issuance of such licenses based upon social equity or minority and women owned business preferences. It is clear that the small number of such licenses to be issued are set asides for favored persons, and there is no reasonable prospect that such businesses licenses will be issued to out of state applicants or non-social equity or minority and women owned business applicants.

<u>Market Share Set Asides for Social Equity Businesses</u>

106.    The MCA now further requires that dispensaries must set aside at least 25% of their inventory space for products produced by social equity licensed processors and growers, as follows:

> Previously licensed dispensaries, i.e. an operational business that holds a dispensary license issued prior to December 31, 2022, shall reserve 25% of products available for retail sale for products grown, manufactured, extracted, or otherwise produced by (a) licensees that have no common ownership interest or control with the dispensary license holder and (b) social equity licensees. As supply becomes available, these licensees must prioritize products produced by social equity businesses. (See Exhibit H, MCA Guidance for Licensees)

Such a preference violates the equal protection clause of the United States Constitution and violates the dormant commerce clause of the United States Constitution, as it creates unfair competition for those who cannot qualify for State of Maryland issued cannabis licenses, and unfairly excludes out of state competitors from a competitive sales environment, no matter how poor the quality of products offered by the favored class of producers may be.

COUNT I<br>
<u>DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF</u><br>
<u>VIOLATION OF RIGHTS TO EQUAL PROTECTION OF THE LAW</u><br>
<u>UNDER FOURTEENTH AMENDMENT</u><br>
<u>(DISCRIMINATION IN ABILITY TO ACQUIRE A LICENSE)</u><br>
<u>AND UNDER 42 USC 1983</u>

107.    The Plaintiffs incorporate paragraphs 1 through 106 of this Complaint as though set forth fully within this Count.

108.    The present Maryland Cannabis Reform Act, in its social equity restrictions, set asides for minority and women business applicants, numerical restrictions upon licensure, and licensure by lottery, violates the rights of the Plaintiffs to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

109.    The Plaintiffs either have suffered and/or continue to suffer ongoing harm due to this unequal treatment under the Maryland Cannabis Reform Act, including the past temporary closures of some of the Plaintiffs' businesses, the inability of the Plaintiffs to meaningfully apply for a license to continue to sell their Federally lawful product, loss of business opportunities, and inability to manufacture, distribute, or sell at retail Federally lawful hemp products, such as gummies, chocolates, and THC infused beverages, upon equal terms that are afforded to the state licensed dispensaries and manufacturers.

110.    The Defendants have further violated the Civil Rights of the Plaintiffs.

WHEREFORE, the Plaintiffs pray that this Court enter a declaratory judgment that:

A.    The State of Maryland social equity restrictions upon licensure were and are in violation of the equal protection requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

B.    The State of Maryland numerical restrictions upon licensure were and are in violation of the equal protection requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

C.    The State of Maryland "lottery system" for licensure is and was in violation of the equal protection requirements of the Fourteenth Amendment of the United States

Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

D.      The selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, is in violation of the equal protection requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

E.      That the State policies denying access to the METRC system to the Plaintiffs, thereby locking them out from doing legitimate business with state licensed dispensaries, is a violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

F.      The requirement of a "detailed diversity statement" and business plan as part of the licensing review process, without any oversight to prevent arbitrary or capricious determinations of eligibility, are in violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution.  The Plaintiffs further pray that appropriate injunctive relief be granted.

G.      That the State policies allowing the sale of Federally lawful THC infused beverages, chocolates, and gummies by state licensed dispensaries, but not by the Plaintiffs, in a violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

H.      That the Defendants have violated the Civil Rights of the Plaintiffs under 42 USC 1983, whereupon actual damages after a jury trial, as well as punitive damages and attorneys' fees, should be awarded.

I.      For whatever other relief the justice of the cause may demand.

COUNT II
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
VIOLATION OF RIGHT TO DUE PROCESS OF LAW
UNDER FOURTEENTH AMENDMENT AND
VIOLATION OF CIVIL RIGHTS PURSUANT TO
42 USC 1983

111.    The Plaintiffs hereby incorporate paragraphs 1 through 110 set forth above, as though set forth fully under this Count.

112.    The provisions of Maryland Law set forth above further violate the Plaintiff's right to Due Process under the 14th Amendment to the U.S. Constitution, and violate the Plaintiffs' civil rights under 42 USC 1983.

WHEREFORE, the Plaintiffs pray that this Court enter a declaratory judgment that:

A.    The State of Maryland social equity restrictions upon licensure were and are in violation of the due process requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

B.    The State of Maryland numerical restrictions upon licensure were and are in violation of the due process requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

C.    The State of Maryland "lottery system" for licensure is and was in violation of the equal due process requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

D.    The selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, is in violation of the due process requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

E.    That the State policies denying access to the METRC system to the Plaintiffs, thereby locking them out from doing legitimate business with state licensed dispensaries, is a violation of the due process requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

F.    The requirement of a "detailed diversity statement" and a business plan as part of the licensing review process, without any oversight to prevent arbitrary or capricious determinations of eligibility, are in violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution.  The Plaintiffs further pray that appropriate injunctive relief be granted.

G.    That the State policies allowing the sale of Federally lawful THC infused beverages, chocolates, and gummies by state licensed dispensaries, but not by the Plaintiffs, in a violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

H.    That the Defendants have violated the Civil Rights of the Plaintiffs under 42 USC 1983, whereupon actual damages after a jury trial, as well as punitive damages and attorneys' fees, should be awarded.

I.    For whatever other relief the justice of the cause may demand.

COUNT III
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
VIOLATION OF DORMANT COMMERCE CLAUSE AND
VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983

113.    The Plaintiffs hereby incorporate paragraphs 1 through 112 set forth above, as though set forth fully under this Count.

114.    The provisions of Maryland Law set forth above, unlawfully impede interstate commerce and are unlawful under "dormant commerce clause" caselaw.

WHEREFORE, the Plaintiffs pray that this Court enter a declaratory judgment that:

A.      The Defendants, by restricting who may sell Federally lawful THC infused beverages to state licensed dispensaries, are in violation of the dormant commerce clause. The Plaintiffs further pray that the Court order appropriate injunctive relief.

B.      The Defendants, by restricting who may manufacture Federally lawful THC beverage products for sale in the State of Maryland to state licensed processors, are in violation of the dormant commerce clause. The Plaintiffs further pray that the Court order appropriate injunctive relief.

C.      The Defendants, by restricting licensure in the manner set forth in Counts I and II of this Complaint, and thereby prohibiting or severely discriminating against out of state persons and entities as to Maryland licensure for the purpose of selling or distributing Federally lawful THC containing products in the State of Maryland, are in violation of the dormant commerce clause. The Plaintiffs further pray that the Court order appropriate injunctive relief.

D.      The State of Maryland numerical restrictions upon licensure were and are in violation of the dormant commerce clause. The Plaintiffs further pray that the Court order appropriate injunctive relief.

E.      The State of Maryland "lottery system" and social equity system for cannabis licensure, insofar as it applies to the sale of Federal lawful hemp products, is in violation of the dormant commerce clause. The Plaintiffs further pray that the Court order appropriate injunctive relief.

F.      The selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, is in violation of the dormant commerce clause.. The Plaintiffs further

pray that appropriate injunctive relief be granted.

G.    That the State policies denying access to the METRC system to the Plaintiffs and others similarly situated, insofar as those regulations apply to Federally lawful products, thereby locking them out from doing legitimate business with state licensed dispensaries, is a violation of the dormant commerce clause. The Plaintiffs further pray that appropriate injunctive relief be granted.

H.    That the State policies allowing the sale of Federally lawful THC infused beverages, chocolates, and gummies by state licensed dispensaries, but not by the Plaintiffs or others similarly situated, is a violation of the dormant commerce clause. The Plaintiffs further pray that appropriate injunctive relief be granted.

I.    That the Defendants have violated the Civil Rights of the Plaintiffs under 42 USC 1983, whereupon actual damages after a jury trial, as well as punitive damages and attorneys' fees, should be awarded.

J.    For whatever other relief the justice of the cause may demand.

<u>COUNT IV</u>
<u>TAKING WITHOUT JUST COMPENSATION</u>
<u>UNDER FOURTEENTH AMENDMENT OF</u>
<u>THE UNITED STATES CONSTITUTION AND</u>
<u>VIOLATION OF CIVIL RIGHTS PURSUANT TO</u>
<u>42 USC 1983</u>

115.    The Plaintiffs hereby incorporate paragraphs 1 through 114 set forth above, as though set forth fully under this Count.

116.    The provisions of Maryland Law set forth above, as applied, have resulted in the unlawful taking without just compensation of Plaintiff's property.

WHEREFORE, the Plaintiffs pray for a declaratory judgment and monetary damages and a jury trial as to a taking without just compensation in that:

A.     The Defendants have unlawfully prevented the Plaintiffs from pursuing a lawful business, in violation of their rights, depriving Plaintiffs of a valuable property right in their businesses and incomes; and,

B.     The Defendants have unlawfully engaged in the seizure of property of the Plaintiffs and others similarly situated. The Plaintiffs further pray that the Court enter appropriate injunctive relief as to this matter.

C.     The Defendants, by restricting who may manufacture Federally lawful THC beverage products for sale in the State of Maryland to state licensed processors, have unlawfully deprived the Plaintiffs and others similarly situated of a valuable property right in their businesses and incomes; and the Plaintiffs further pray that the Court order appropriate injunctive relief.

D.     The selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, has resulted in the unlawful search and seizure or reasonable apprehension of unlawful search and seizure of Plaintiff's property; and the Plaintiffs further pray that the Court order appropriate injunctive relief.

E.     That the Defendants have violated the Civil Rights of the Plaintiffs under 42 USC 1983, whereupon actual damages after a jury trial, as well as punitive damages and attorneys' fees, should be awarded.

F.     For whatever other relief the justice of the cause may demand.

Respectfully Submitted,


__s/Nevin L. Young_____
Nevin L. Young
Fed. Bar ID No. 28604
170 West Street
Annapolis, Maryland 21401
Telephone: 410-353-9210
Email: nevinyounglaw@gmail.com


_/s/Carlos M. Recio_____
Carlos M. Recio
Fed. Bar ID. No. 01294
1016 7th Street SE
Washington, D.C. 20003
Telephone:    202-293-5690
Facsimile:    202-543-0770
Email:crecio@reciolaw.com


<u>DEMAND FOR JURY TRIAL</u>

The Plaintiffs hereby demand a jury trial on all matters so triable.


__s/Nevin L. Young_____
Nevin L. Young
Fed. Bar ID No. 28604