**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore)**

CHARM CITY HEMP, LLC
d/b/a CHARM CITY HEMP, ET AL.                                    Case No: 25-1744-RGB

     *Plaintiffs*

v.

GOVERNOR WES MOORE, in his
Official Capacity as
Governor of Maryland, et al.

     *Defendants*

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### Table of Contents

Table of Contents.................................................................................................1

Table of Authorities............................................................................................2

Statement of Facts...............................................................................................3

    The Irrational Licensing Scheme........................................................7

    Hemp Flower Products.......................................................................14

    Unlawful Searches, Seizures, and Enforcement Actions against
    Hemp Products....................................................................................16

    Unlawful restrictions on Multiple Levels of Business Venture..........17

    Out of State Business.........................................................................18

    On Site Consumption Licenses..........................................................19

    Market Set Asides for Social Equity Licensees.................................19

    II.      DISCUSSION

          A.      The Plaintiffs are likely to prevail upon the merits......................20

1.   The Dormant Commerce Clause Violation....................................25

2.   Unlawful enforcement actions.......................................28

B.   The Plaintiffs have already suffered, and will
     continue to suffer irreparable harm without an injunction..........30

C.   Balance of Equities Favors Plaintiffs..............................30

D.   The public interest favors an injunction.......................31

Relief Requested.......................................................31

## Table of Authorities

### Cases

*Am. Trucking Ass'ns v. Whitman*, 437 F.3d 313 (3d Cir. 2006).................................27, 30

*Ames v. Ohio Department of Youth Services*, 605 U.S. __ (June, 2025).........................24

*Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184 (4th Cir. 2013)..............................31

*City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978).................................27

*City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989).............................10

*Cloverland–Green Spring Dairies, Inc. v.
Pa. Milk Mktg. Bd.*, 298 F.3d 201 (3d Cir. 2002)) (*Cloverland I*).................................28

*Jensen v. Maryland Cannabis Administration, et al.*,
Case No. 1:24-cv-00273 (U.S. Dist. Ct. Md. 2023)..................................25, 26

*Leaders of a Beautiful Struggle v. Baltimore Police Dept.*,
2 F.4th 330 (2021)..........................................................30, 31

*Loki Brands, LLC v. Platkin*, 2024 WL 4457485 (Dist. N.J. 2024)..............................27

*Lowe v. City of Detroit*, 544 F.Supp.3d. 804 (E.D. Mich. 2021).......................18, 27, 31

*Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411 (D. Conn. 2020)...............................30

*Maryland Hemp Coalition v. Wes Moore*,
Case No. C-21-CV-23-000348 (Washington County Md. 2023).....................................4

*New Energy Co. of Indiana v. Limbach*, 486 U.S. 269 (1988).........................................27

*Northeast Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2024)....................................26

*Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023).....................................24

*United States v. Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011)..................................10

*Washington v. Davis*, 426 U.S. 229 (1976).....................................10

*Wilson v. Thomas*, No. 5:14-CV-85-BO, 2014 WL 7405462 (E.D.N.C. Dec. 23, 2014)..................................31

**Statutes**

COMAR 15.01.17.10...............................................................14, 28, 29, 31

Md. Code Ann. Alc. Bev. §36-101(ff)..............................................8

Md. Code Ann. Alc. Bev. §36-401.................................................6, 7

Md. Code Ann. Alc. Bev. §36-404(f)(1).............................................9, 17, 21

Md. Code Ann. Alc. Bev. §36-1102................................................6, 7

**Statement of Facts**

1.      The Plaintiffs in this case are a coalition of persons involved in farming, manufacturing, distribution, retail sales, or consumption of low-dose THC hemp products such as gummie bears, beverages and dietary supplements, all of which are legal under Federal Law ("Hemp Products"). As part of the implementation of Maryland's Recreational Cannabis Act, which went into effect on July 1, 2023, the right to farm, distribute or sell  Hemp Products was stripped from the Plaintiffs and given to a few hand-picked licensed Cannabis sellers.

2.      The Plaintiffs obtained some relief under State law claims filed in the Circuit Court for Washington County, Maryland, in the form of a preliminary injunction based not upon Federal law, but upon claims under the Maryland Declaration of Rights.[1] (See Opinion of

---

[1] *Maryland Hemp Coalition, Inc., et al. v. Wes Moore, et al.,* Case No. C-21-CV-23-000348

October 12, 2023, and Order of October 12, 2023, Exhibits A and B). The issuance of that preliminary injunction has been appealed by the State of Maryland, and the decision upon appeal is still pending.[2] Since the time of the issuance of the preliminary injunction by the Washington County Circuit Court, the State of Maryland has passed new legislation[3] and taken new enforcement actions in an attempt to further the monopoly interests of those who have received a cannabis license.

3.      In 2018, the passage of the Agriculture Improvement Act (commonly known as the 2018 Farm Bill), Public Law 115-334, changed the legal landscape related to the plant known as Cannabis Sativa dramatically.

4.      Up until the time of the passage of the 2018 Farm Bill, almost all derivatives of the Cannabis Sativa plant were considered to be Federally illegal "marijuana" and were illegal under both Federal and most state laws, including the law of the State of Maryland. Congress recognized the changing attitudes toward hemp and cannabis, the industrial and medical utility of plants containing certain derivatives of the Cannabis Sativa plant, and the wide variation in potency in terms of THC levels found in that plant.  Accordingly, Congress determined that unless a Cannabis Sativa plant tested above a certain threshold of Delta-9 THC (more than 0.3%) within 30 days prior to harvest, that plant would be deemed hemp rather than cannabis, and would not be unlawful under Federal law. (hereinafter sometimes "Hemp Products.")

5.      The State of Maryland, in 2020, implemented its own agricultural plan for hemp production, which largely mirrored the 2018 Farm Bill in terms of definitions and testing standards.  This law went into effect on November 1, 2020.

6.      From the time of passage of the 2020 Maryland hemp legislation, up until the

---

[2] *Wes Moore, et al. v. Maryland Hemp Coalition, Inc., et al.*, Appellate Court of Maryland, Case No. ACM-REG-1590-2023.
[3] Senate Bill 215, as signed by Governor, effective July 1, 2025

passage of the Cannabis Reform Act in 2023, the State of Maryland had no laws regulating the sale or distribution of any THC products derived from hemp with less than 0.3% Delta 9 THC. Under Maryland law from 2020 to 2023, such Hemp Products with less than 0.3% Delta 9 THC, were defined as industrial hemp rather than as marijuana. It is hemp, rather than cannabis (which has much higher levels of Delta-9 THC) that is grown by the Plaintiff farmers in this case.

7.      Most of the Hemp Products legally sold by the Plaintiff retailers prior to July 1, 2023, were products mostly comprised of Delta 8 THC or other types of THC that are a result of the extraction of cannabis oil, rather than Delta 9 THC, which is generally recognized as the most potent form of THC and the predominant active ingredient in illegal cannabis. Many Hemp Products are obtained from hemp farmers and processors in the State of Maryland, but some of those products are obtained from out of state sources, since the interstate shipment of such products is lawful. (See Affidavit of Levi Sellers, Exhibit D).

8.      From 2014 until July 1, 2023, the State of Maryland had a statewide licensing scheme for distributing medical cannabis, derived from cannabis plants with Delta 9 THC content greater than 0.3%, and had operated such a scheme since its implementation in 2014. The products sold by state licensed medical marijuana dispensaries at that time were, and still are, in clear violation of Federal law.

9.      During the 2023 legislative session, the General Assembly addressed the issue of legalizing recreational cannabis. The 2023 Cannabis Reform Act passed by the Maryland General Assembly licensed a select few businesses to sell products derived from sources in excess of 0.3% Delta 9 THC.  These were Marijuana Products that were previously unlawful to sell or distribute in Maryland See Md. Code Ann. Crim. Law §5-602(b)(1).

5

10.     It remains a serious crime in Maryland to distribute cannabis or cannabis derived products without a license granted by the Maryland Cannabis Administration, that is, from plants that are more than 0.3% Delta 9 THC by dry weight --- a threshold defined in Md. Code Ann. Agriculture §14-101, with the plant having been tested thirty or fewer days pre-harvest to determine whether it is hemp or cannabis.

11.     However, the 2023 Cannabis Reform Act also, for the first time, prohibited the sale or distribution of previously lawful Hemp derived Products (other than certain tinctures). under most circumstances.[4]

12.     The products sold by the Plaintiff retailers, are derived from hemp and not marijuana. These Hemp Products are therefore lawful under Federal Law pursuant to the 2018 Farm Bill. However these Hemp Products, cannot meet the new standard for maximum milligrams of THC imposed by the new Md. Code Ann. Alc. Bev. §36-1102, under the new

---

[4] Md. Code Ann. Alc. Bev. §36-1102 provides, in relevant part:
(b) (1) A person may not sell or distribute a product intended for human consumption or inhalation that contains more than 0.5 milligrams of tetrahydrocannabinol per serving or 2.5 milligrams of tetrahydrocannabinol per package unless the person is licensed under § 36-401 of this title and the product complies with the:

(i) manufacturing standards established under § 36-203 of this title;
(ii) laboratory testing standards established under § 36-203 of this title; and
(iii) packaging and labeling standards established under § 36-203 of this title.

(2) A person may not sell or distribute a product described under paragraph (1) of this subsection to an individual under the age of 21 years.

(c) A person may not sell or distribute a cannabinoid product that is not derived from naturally occurring biologically active chemical constituents.

(d) (1) Notwithstanding subsection (b) of this section and subject to paragraph (2) of this subsection, it is not a violation of this section for a person to sell or distribute a hemp-derived tincture intended for human consumption that contains:
(i) a ratio of cannabidiol to tetrahydrocannabinol of at least 15 to 1; and
(ii) 2.5 milligrams or less of tetrahydrocannabinol per serving and 100 milligrams or less of tetrahydrocannabinol per package.
(2) To sell or distribute a hemp-derived tincture under this subsection, a person must provide, as required by the Administration, tincture samples for the purpose of testing to determine chemical potency and composition levels and to detect and quantify contaminants.

(e) A person who violates subsection (b) of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000. . . .

Cannabis Reform Act. (Affidavit of Levi Sellers, Exhibit D).

13.     To continue to lawfully market or sell the Hemp Products they have devoted themselves to lawfully selling, the Plaintiff retailers are required under Maryland's Cannabis Reform Act to obtain a recreational cannabis license under the Act, which is, for reasons set forth below, almost impossible to obtain.

## **The Irrational Licensing Scheme**

14.     The typical and facile response to most complaints that a product once sold without a license now requires a license to sell, is that the complainant should "get a license." However, that is virtually impossible.

15.     <u>First</u>, the licensing scheme implemented in 2023 provides, at Md. Code Ann. Alc. Bev. §36-401(d), in relevant part, that:

> (d) The Administration may not issue more than the following number of licenses per type, including licenses converted under subsection (b)(1)(ii) of this section:
> (1) for standard licenses:
> (i) 75 grower licenses;
> (ii) 100 processor licenses; and
> (iii) 300 dispensary licenses;
> (2) for micro licenses:
> (i) 100 grower licenses;
> (ii) 100 processor licenses; and
> (iii) 10 dispensary licenses;
> (3) for incubator space licenses, 10 licenses; and
> (4) for on-site consumption licenses, 50 licenses.
> (e)
> (1) This subsection applies to all licenses, including licenses converted under subsection (b)(1)(ii) of this section.

16.     The number of new licenses to dispense previously illegal cannabis products or previously legal Hemp Products in Maryland was limited to 300 lucky lottery winners[5], A

---

[5] There were as of July 2023 already at least 100 medical cannabis dispensaries in Maryland, and all or almost all of them have converted to recreational dispensaries as was allowed by the 2023 CRA.

limited number of licenses are available subject to a second round of a "lottery" system.  In order to even participate in the first round of lottery license issuance at all, (which has now already occurred), prospective licensees were required to meet certain factors purported to address "social equity concerns" as follows:

17.    Md. Code Ann. Alc. Bev. §36-101(ff) states:

"Social equity applicant" means an applicant for a cannabis license or cannabis registration that:
(1) has at least 65% ownership and control held by one or more individuals who:
(i) have lived in a disproportionately impacted area for at least 5 of the 10 years immediately preceding the submission of the application;
(ii) attended a public school in a disproportionately impacted area for at least 5 years; or
(iii) for at least 2 years, attended a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant; or
(2) meets any other criteria established by the Administration.

18.    The social equity factors and geographical factors considered for social equity status have no rational relationship to any public safety or health concerns. Plaintiffs submit they were designed to placate political criticism about the legalization of cannabis, and poorer and minority persons being shut out of the market, but hypocritically designed to restrict the market, keeping prices high and therefore maximizing the State's tax revenue from product sales. In other words, a classic prohibited monopoly, with the State as a willing profiteer in a system in flagrant violation of Federal law.

19.    In fact, in evaluating this case in relation to the claims of the Plaintiffs made under the Maryland Declaration of Rights, Judge Wilson of the Circuit Court for Washington County specifically found that "the overall total number of licenses that may be obtained is capped for the purpose of manipulating supply, price, and license value. . . the public does not benefit when government intentionally constrains power and wealth in the hands of a few."

(Opinion, Exhibit A, p. 7, ¶2).

20.    The first round of licenses has unfortunately already been awarded by the State, which immediately proceeded with its second round social equity licensing scheme.  The state has proceeded despite a clear declaration by Judge Wilson that those factors were likely unconstitutional under the Maryland Declaration of Rights.

21.    The amendments to the 2023 Cannabis Reform Act as passed during the 2025 legislative session and signed into law by the Governor, state that for the next round of licenses,

Md. Code Ann. Alc. Bev. §36-404(f)(1):

> Subject to paragraph (2) of this subsection, if the Administration, in consultation with the certification agency designated by the Board of Public Works under § 14–303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, determines that a disparity study demonstrates a strong basis in evidence of business discrimination against firms owned by minorities and women in the Maryland cannabis market, the Administration shall issue a second round of licenses, applying minimum licensing qualifications and employing remedial measures consistent with constitutional requirements, for not more than:
>
> (i) for standard licenses:
> 1. 25 grower licenses;
> 2. 25 processor licenses; and
> 3. 120 dispensary licenses;
> (ii) for micro licenses:
> 1. 70 grower licenses; and
> 2. 70 processor licenses; **AND**
> (iii) 10 incubator space licenses**[**; and
> (iv) 15 on–site consumption licenses**]**.
>
> (2) If the Administration, in consultation with the certification agency designated by the Board of Public Works under § 14–303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, determines that a lottery system employing remedial measures established in accordance with a disparity study can be

conducted consistent with constitutional requirements, the Administration shall award licenses under paragraph (1) of this subsection through a lottery process that employs remedial measures.

(See Exhibit C, Senate Bill 215).

22.    Such racial classifications are presumptively unconstitutional, and the government bears the burden of proving constitutionality. *United States v. Bannister*, 786 F. Supp. 2d 617, 664 (E.D.N.Y. 2011) (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)). They are only allowed as a remedy to "specific, identified instances" of prior unconstitutional or unlawful discrimination. *Students for Fair Admissions*, *Harvard*, 600 US 181 (2023), 600 U.S. at 207, see also *City of Richmond v. J.A. Croson Co*., 488 U.S. 469, 495, 505 (1989).

23.    The State further requires that applicants submit both a "detailed diversity statement" and a business plan, which are to be reviewed for suitability by the Maryland Cannabis Administration.  The State provides only spurious guidance as to what an acceptable business plan or diversity statement might look like.  There is no process for documenting the manner in which such a diversity statement or business plan is to be reviewed and approved or disapproved, no apparent process for review (or even for notice to the applicant of the reasons for rejection), if the application is rejected due to an unsuitable business plan or diversity statement. (See Exhibit E, Maryland Evaluation Worksheet).

24.    The State, with new laws and regulations passed to amend the 2023 CRA in 2025, now threatens to restrict the sale of THC containing chocolates, gummies and THC infused beverages to State licensed dispensaries that also procure all of their products from State licensed dispensaries, even though those products are regularly traded in interstate commerce. (See Affidavit of Levi Sellers, Exhibit D).

25.    The Plaintiff retailers were and are willing to be licensed as recreational cannabis

dispensaries for the purposes of continuing to sell their Federally legal Hemp Products, but the State makes no provision for them to receive any licenses on a provisional, expedited or priority basis.

26.    The State of Maryland has long maintained that the hemp retailers, including certain Plaintiffs in this action, are selling "adulterated food products" pursuant to FDA regulations.  These FDA regulations, are deemed incorporated into the State health department regulations.  As a result certain local health departments refuse to issue permits to hemp retailers to participate in local festivals or other activities where samples of products would be offered, and leaves the hemp retailers open to enforcement actions by local health departments.

27.    This claim by the State of Maryland is based upon the fact that hemp retailers often sell products containing Federally lawful types and amounts of THC, that are delivered in the form of gummy type candies or chocolate candies. However, it is an extremely widespread practice for state licensed Cannabis dispensaries to do exactly that, and was at the time of the injunction hearing in 2023. (Affidavit of Levi Sellers, Exhibit D).

28.    The State has recently changed its publicly available information, now stating that state licensed Cannabis dispensaries, and *only* state licensed Cannabis dispensaries, are allowed to sell what the State formerly called "adulterated food products", such as gummies, chocolates, and hemp infused beverages, for each consumer, up to 1.5 ounces of flower (pre-packaged flower and pre-rolls), 12 grams of concentrates (vapes, wax, shatter, budder, resin), or 750 mg of THC (***edible gummies, chocolates, beverages, capsules, tinctures). (Emphasis added). (Exhibit F, State of Maryland Cannabis Administration's "Frequently Asked Questions" website, bottom of first page).***

29.    Plaintiff South Mountain Microfarm, LLC, was denied a permit by a local health

department to participate in a local festival on the basis of its Hemp Products being "adulterated foodstuffs", according to the local health department, which cited FDA regulations. At the same time, state licensed cannabis dispensaries sell chocolates, gummies, and THC infused beverages with the full approval of the Maryland Cannabis Administration, with no enforcement actions by the State. (Affidavit of Levi Sellers, Exhibit D).

30.     At the time of the Washington County preliminary injunction hearing in September of 2023, THC infused beverages were in a nascent stage and were not a large part of the market. Since then, THC infused beverages have become a very large and profitable venture for many manufacturers, distributors, and retailers of such beverages, both in the State of Maryland and in other states.

31.     Pursuant to new legislation passed by the General Assembly, which will go into effect on July 1, 2025, a) only state licensed Cannabis dispensaries are permitted to sell cannabis infused beverages, but b) only if those beverages are produced by a processor licensed by the State of Maryland as a cannabis licensee. This law excludes any THC infused beverages produced by any non-licensee from the marketplace, whether the producer is a hemp producer or a cannabis producer, and whether the producer is a Maryland resident or not. (Senate Bill as signed by governor, Exhibit C).

32.     Plaintiffs are involved in selling and in producing THC infused beverages. Many of those beverages are presently produced by out of state, non-Maryland licensed producers. But these out-of-state produced, due to the lottery, social equity, and other restraints upon trade, cannot obtain a Maryland license. Therefore the market is now to be monopolized by only those producers who can obtain a Maryland cannabis license for processing cannabis products. (Affidavit of Levi Sellers, Exhibit D).

33.     Most THC infused beverages are by design compliant with Federal law, since they are intended for interstate distribution and sale, and since such interstate distribution and sale would be illegal under Federal law if the product exceeded the Federal limits defining it as cannabis. (Affidavit of Levi Sellers, Exhibit D).

34.     Plaintiff South Mountain Microfarm, LLC, has had a THC beverage under development in its West Virginia facility that is ready to begin distribution.  This THC beverage is legal under federal law, and South Mountain wishes to distribute that product through hemp retailers in the State of Maryland. It is not allowed under present State of Maryland policies to sell its products in Maryland.  Similarly, Plaintiff Endo Production Company has an ongoing business distributing THC infused beverages and wishes to continue to compete in the Maryland marketplace for such beverages.

<u>Hemp Flower Products</u>

35.     The Cannabis Sativa plant is the origin of both hemp and cannabis. Depending upon the seed, the strain, the growing conditions, and the time of harvest, a Cannabis Sativa plant may ultimately either test under or over the Federal (and State) threshold of 0.3% Delta 9 THC. (See Exhibit G, COMAR 15.01.17.10).

36.     A plant such as Cannabis Sativa is not completely stable in its development, aging, or chemical structure. As is recognized by both the Federal government and by the State of Maryland, the chemical composition of the plant may change over time. (Affidavit of Levi Sellers, Exhibit D).

37.     When setting the amount of permissible Delta 9 THC at 0.3%, the authors of the 2018 Federal Farm Bill settled upon a firm definition for the time of testing based upon the time of harvest.  The State of Maryland, in the Code of Maryland Regulations, largely adopted that

standard. The time for determining whether a plant is lawful hemp or unlawful cannabis, under both the Federal and State of Maryland standards, is 30 or fewer days before harvest of the plant. <u>See</u> Code of Maryland Regulations (COMAR) 15.01.17.10. (Exhibit G).

38.    It was understood by those who implemented the testing standard that the plant, if tested earlier or later, may yield different test results -- which was precisely the reason why the 30 or fewer days preharvest standard was adopted. (Affidavit of Levi Sellers, Exhibit D).

39.    Both licensed Cannabis dispensaries and retail Hemp Product sellers are engaged in the sale of hemp flower products, which are Federally lawful and therefore may be obtained not just within the State of Maryland, but from sources outside the State of Maryland. Those products are provided by the grower with a certificate of analysis showing compliance with the 30-day preharvest standard, evidencing that the plant is in fact hemp and not cannabis. (Affidavit of Levi Sellers, Exhibit D).

40.    The State of Maryland has long argued that in order to assure the financial success of licensed Cannabis dispensaries, that it is necessary to restrict the number of growers, processors, and retailers of Cannabis Silva products generally. However, for no rational reason, the State of Maryland also allows state licensed Cannabis dispensaries to purchase as much Federally lawful out-of-state hemp flower as they desire, which can then be entered into the state database for cannabis sales (the system is offered by a commercial vendor known as METRC, or Marijuana Enforcement Tracking Regulation and Compliance, to which the Plaintiff hemp retailers do not have access). Once the product is entered into METRC by the licensee, they can sell as much of the product as they desire. (Affidavit of Levi Sellers, Exhibit D).

41.    The licensed Cannabis dispensaries are happy to sell hemp flower rather than

cannabis flower, because it is Federally lawful and avoids the tax problems under section IRC 280e that accompany the sale of a Federally illegal products. Hemp flower is also less expensive, more easily available from a wider range of sources, and with a wider product variety, than the other Cannabis products offered by the Cannabis dispensaries. (Affidavit of Levi Sellers, Exhibit D).

Unlawful Searches, Seizures, and<br>Enforcement Actions against Hemp Flower

42.    In order to pursue its goal of forcing hemp retailers out of business, in recent weeks, local law enforcement agencies in Baltimore City and Harford County, acting at the request and with the cooperation of the Maryland Alcohol, Tobacco and Cannabis Commission have begun a campaign of unlawful searches, seizures, and enforcement actions against hemp retailers (of course, not against licensed Cannabis dispensaries) related to the sale of hemp flower.

43.    Several hemp retailers in Baltimore City have been the subject of search and seizure warrants, and in at least one case, criminal charges for the sale of "cannabis" based upon testing of the seized product. The testing was conducted outside of the 30-day pre-harvest regulatory window for determining whether the product is hemp or cannabis, and is therefore an inaccurate test not in compliance with the State of Maryland's own regulations.

44.    Some of those search and seizure warrants have been wrongfully issued based upon a mere "sight and smell" approach applied by law enforcement officers, rather than upon any preliminary testing. Given that it is impossible to know if a Cannabis plant is lawful hemp or unlawful Cannabis by mere sight and smell, those warrants were issued without probable cause and the law enforcement officers' claims that probable cause existed were false. (Affidavit of Levi Sellers, Exhibit D).

45.     The plain language of the regulations established a less than 30 day testing timeframe for determining whether a product is hemp or cannabis under the Maryland Cannabis Reform Act.However, the State has taken the position that if the seized product tests above 0.3% Delta 9 THC <u>when seized</u>,., the product has now "converted" to cannabis and can expose the seller to criminal liability.  The State takes this position despite the fact that the product qualified as hemp under the State's own definitions, and despite the fact that the retailer received a certificate of analysis attesting to that fact and has no way of knowing the product will later test differently.

46.     Plaintiffs who engage in the sale of hemp flower have a reasonable apprehension that they may be targeted for similar unlawful searches, seizures and enforcement actions, and seek an injunction and declaratory judgment that such seizures are unlawful. (Affidavit of Levi Sellers, Exhibit D).

<u>Unlawful Restrictions on Multiple Levels of Business Venture</u>

47.     The 2023 and 2025 Cannabis Reform Acts restrict Cannabis licensees to participation in a maximum of two market sectors among three: retail, processing, or growing. The Plaintiff South Mountain Microfarm, LLC, has always functioned as all three; growing hemp, processing the hemp into finished product for sale, and retail sales of the finished product. This Plaintiff does not operate at a large enough scale to constitute a vertical monopoly or to have significant market control. (Affidavit of Levi Sellers, Exhibit D).

48.     Under Md. Code Ann. Alc. Bev. §36-404(b)(3)(i), the MCA may not accept more than one application per license type per round per applicant, and no more than two total applications per round per applicant. Given the lottery structure, this makes the likelihood of an applicant receiving a license to operate in two areas a near impossibility, even if the applicant

overcomes the other arbitrary social equity/minority business enterprise/diversity statement/business plan obstacles to obtaining a license. Regardless, the ability to operate on all three levels is a total impossibility.

49.    For a small company, being able to operate in multiple sectors is vital to controlling supply and product output. For example, Plaintiff South Mountain Microfarm, LLC, is unable to purchase products for business use as a processor from state licensed Cannabis dispensaries (due to being locked out of the METRC system), unable to sell as a processor to state licensed retail dispensaries (again due to being locked out of the METRC system), and cannot be granted a retail dispensary license due to diversity and social equity limitations. The practical effect of such a system is to put hemp producers and growers out of business forever, in favor of state licensed "seed to sale, METRC qualified" growers, processors, and retailers, since no level of the state licensed monopoly governed by the METRC system will have any dealings with the hemp producers, processors, or retailers. (Affidavit of Levi Sellers, Exhibit D).

<u>Out of State Businesses</u>

50.    Plaintiffs South Mountain Microfarm, LLC, and J. Wyand, Inc., d/b/a Simple Pleasures, are businesses with West Virginia business operations also doing business in the State of Maryland, that desire to continue operating in Maryland with products that are obtained in interstate commerce, including THC beverages and other products that contain THC but are Federally lawful products, that are not produced in the State of Maryland. (Affidavit of Levi Sellers, Exhibit D).

51.    Under the new Cannabis Reform Act amendments which are to be implemented on July 1, 2025, out of state THC infused beverage manufacturers, and non-Maryland licensed

retailers of THC infused beverages, will find that the market has been completely closed to them. The new regulations and laws allow only licensed dispensaries to sell THC infused beverages, and those beverages are required to be obtained from Maryland licensed processors. (See new Senate Bill, Exhibit C).

52.    As treated further below, numerous Federal courts have found that similar restrictions violate rights of equal protection, and violate the dormant commerce clause,[6] and the Plaintiffs ask this Court to find the same.

<u>On Site Consumption Licenses</u>

53.    The 2025 Senate Bill 215 as passed into law also authorizes the issuance of 15 "on site consumption licenses." There is no rational basis for limiting this number of licenses to 15, and there is no rational basis for conducting the issuance of such licenses based upon social equity or minority and women owned business preferences. It is clear that the small number of such licenses to be issued are set asides for favored persons, and there is no reasonable prospect that such businesses licenses will be issued to out of state applicants or non-social equity or minority and women owned business applicants. (See new Senate bill, Exhibit C).

<u>Market Share Set Asides for Social Equity Businesses</u>

70.    The MCA now further requires that dispensaries must set aside at least 25% of their inventory space for products produced by social equity licensed processors and growers, as follows:

> Previously licensed dispensaries, i.e. an operational business that holds a dispensary license issued prior to December 31, 2022, shall reserve 25% of products available for retail sale for products grown, manufactured, extracted, or otherwise produced by (a) licensees that have no common ownership interest or control with the dispensary license holder and (b) social equity licensees. As

---

[6] *NE. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542 (1st Cir. 2022); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021)

supply becomes available, these licensees must prioritize products produced by social equity businesses. (See Exhibit H, MCA Guidance for Licensees)

71.    Such a preference violates the equal protection clause of the United States Constitution and violates the dormant commerce clause of the United States Constitution, as it creates unfair competition for those who cannot qualify for State of Maryland issued cannabis licenses.  The preference unfairly excludes out of state competitors from a competitive sales environment, no matter how poor the quality of products offered by the favored class of producers may be.

72.    Such a preference is further void for vagueness, as the product set aside does not have a definition as to whether the 25% benchmark is calculated by gross weight of products, number of products, or dollar value of products.

## II.    DISCUSSION

### A.    The Plaintiffs are likely to prevail upon the merits

#### 1.    The State's discrimination against Plaintiffs as to the ability to acquire a license or otherwise continue in business demands the issuance of a Temporary Restraining Order and Preliminary Injunction

The first round of social equity licensing, conducted in the Fall of 2023, has unfortunately already been conducted by the State of Maryland, with licenses having issued forthwith only a few months after the preliminary injunction hearing in the State court -- despite the strong signal from the Circuit Court for Washington County that such a scheme was most likely unlawful.

The State now persecutes the hemp retailers for "not having a license" despite the fact that some of them cannot obtain a license under any scheme the State has devised, and most likely will never obtain a license under any scheme the State has devised. They are quite simply

locked out.

It would be an absurdity to think that a lawyer, architect, medical doctor, or any other person seeking a license to engage in their chose field of endeavor, would tolerate a system that requires that a person to be from the right zip code or the right college, or from the right race and gender.  Further, only after paying $5000 for an application fee, have the issuance of a license depend upon a lottery, with only 300 licenses to be issued no matter how many apply. In such a case, the prospect of oversupply or "too much competition" would never loom as a specter. None would tolerate it. Likewise, the many businesses in Maryland that already sell "potentially dangerous products" such as alcohol, tobacco, and firearms, would never be restricted to such a bizarre regime, which is essentially nothing more than a Commissariat for fortune and privilege (or for political connections and favoritism).

The Plaintiffs have already been subjected to a totally irrational system under which the pursuit of a license would be hopeless.  Given that the Plaintiffs were not able to apply for or receive such licenses, they should be eligible for relief in this Court versus those who received such licenses unfairly.

In determining who is a "social equity applicant", the State relies upon a strange admixture of residency and schooling past and present, the schools one might have attended, the number of cannabis charges brought in an irrationally delineated geographic region, whether one attended public or private school in a certain area, and whether one attended a university or college with a certain number of Pell Grant eligibility. Then on top of that, the Act throws in a discretionary catch-all provision that states that the Administration can consider whatever other factors it wants to consider in determining whether the goal of achieving social equity is met. For this purpose, the Act has created an "Office of Social

Equity" to make determinations as to whether a prospective licensee qualifies. Md. Code Ann. Alc. Bev. §36-404(d)(2).

As implemented by the Maryland Cannabis Administration, zip codes were adopted as the "geographic regions" to be used in calculating whether a person would qualify as a social equity applicant.[7]

At the preliminary injunction hearing in the Washington County Circuit Court, the exhibits and testimony clearly showed that the "zip code" method of license distribution, even if one deems the end permissible, serves only to favor areas with large populations, and does not even remotely further any discernable interest.

As an example, the Plaintiffs introduced into evidence the calculations for two separate zip codes, 21403 (part of Annapolis, where undersigned counsel resides) and 21620, which is the town of Chestertown in Kent County. (E. 978-980), and population figures for each zip code (E. 981-982). In this example calculation, anyone living in the 21403 zip code, regardless of background, was eligible to apply as a social equity applicant, because the 21403 zip code had more than 250 cannabis charges during the baseline time period. Anyone living in the 21620 area code cannot qualify since that zip code had fewer than 250 cannabis charges during the relevant time period. Yet the population of zip code 21403 was 30,269 at the time of the preliminary injunction hearing, while the population of zip code 21620 was 12,853. The number of cannabis charges in zip code 21403 was 362, while the number of cannabis charges in zip code 21620 was 220.

The zip code with fewer cannabis charges per capita qualifies, while the zip code with

---

[7] The Maryland Cannabis Administration did not have any specific directive to do so, but according to the testimony of William Tilburg, Executive Director of the Maryland Cannabis Administration, the Office of Social Equity decided to adopt zip codes because that is what was mentioned during the General Assembly committee hearings as a potential method to delineate certain areas.

the higher number does not.[8] However, even more disturbing, is that the entire system, which purports to attempt a remedy as to past wrongs arising from cannabis prohibition, has less than a 2% chance of striking its target in either of those areas.

The social equity regime as established is an impermissible means to an impermissible end. And, even if one believes that the end is permissible, the means in this case provide no rational hope of reaching that end.

The social equity factors a facially invalid and unreasonable way in which to determine who is eligible for "the Cannabis License lottery." But even if social equity factors were a valid consideration, the manner in which the Act defines those factors is bizarre and irrational. There is no reasonable relation to the goals the Act purports to further, and no showing that there is no other way to advance those goals. The statutedeprives all Marylanders of the right to compete freely in the field of recreational cannabis, and puts almost all existing hemp retailers out of business.

One might call the Act unadulterated Marxist redistribution of wealth. But it fails in even accomplishing that, because the categories of persons entitled to consideration as "social equity" recipients is random and arbitrary -- and there is no showing that this class of persons is more entitled to redress of past wrongs than others. In fact, the very notion of addressing past wrongs, real or imagined, through such a statutory scheme, is violative of the right to equal protection of the laws *ab initio.* The law privileges persons for the mere fact of having lived in certain geographic areas or having attended certain colleges, with nothing more to be considered. Even if one agrees with the purported goals of the social equity provisions of the

---

[8] Applying simple arithmetic, the number of cannabis charges per capita during the baseline time period in zip code 21403 was approximately 1.2% of the population, while the number of cannabis charges per capita in zip code 21620 was approximately 1.7%.

Act, the Act further shuts out most worthy recipients from consideration by the simple limitation upon the number of licenses. Then to add further injury, the Act gives the Administration unbridled discretion to consider any additional factor it wants to consider as a social equity factor, without limitation. With such a provision in the Act, it is certain that lobbying for political favors will be ongoing.

If the General Assembly truly desires to redress past grievances arising from the enforcement of cannabis prohibitions,[9] there are methods of doing so, such as educational and employment opportunities, tax credits for distressed neighborhoods and business zones, and many other means to this end – none of which prevent other residents of Maryland from pursuing their chosen field of endeavor. Instead, the State has chosen to make other would be entrepreneurs in Maryland bear the cost of the State's past mistakes.

In short, all Marylanders should have a right to apply for and rreceive a license to sell the products regulated by the Act, upon equal and objective terms. The State has deprived them of that right.

The present Maryland Cannabis Reform Act, in its social equity restrictions, set asides for minority and women business applicants, numerical restrictions upon licensure, and licensure by lottery, violates the rights of the Plaintiffs to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

Ever since the decision of the Supreme Court of the United States in *Students for Fair Admissions v. Harvard*, 600 US 181 (2023), and more recently, in *Ames v. Ohio Department of Youth Services*, 605 US ____ (June, 2025), such discriminatory schemes are patently unlawful.. The State of Maryland cannot justify geographical, racial or gender discrimination in the

---

[9] The State still vigorously prosecutes those who sell cannabis without a license, but now respectfully refers to them as "the legacy market."

issuance of business licenses -- but this is exactly what the State of Maryland has done and intends to continue doing.

In short, due to the irrational numerical limitations, the impermissible lottery system, and the upcoming anticipated discriminatory restrictions based upon race and sex as to who is eligible to apply for a license, along with the arbitrary and capricious licensing fee, review of a "detailed diversity statement", and review of a business plan, without adequate procedural safeguards, the Plaintiffs, have been prevented from obtaining those licenses.  Similarly, the Plaintiffs have also been unfairly locked out of the State of Maryland's "seed to sale" system and METRC system required to sell many of the products the State now says can only be sold by State licensed dispensaries.

Based upon these factors alone, the Plaintiffs have been egregiously wronged by violation of their rights to equal protection and due process of law under the United States Constitution, and should be allowed to continue in business as though such State licenses had been received by them, and at a minimum should be able to continue to sell all Federally legal products as though such State licenses had been received by them, pursuant to an injunction issued by this Court, with damages for past wrongs inflicted by the State deferred for a final hearing on the merits.

2.    **The Dormant Commerce clause is violated by the new laws, regulations, and polices of the State of Maryland**

In the context of cannabis regulation, other Federal courts have reached decisions that to discriminate against out of state producers or retailers is a violation of the dormant commerce clause. Although this Court exercised abstention recently in the case of *Jensen v. Maryland*

*Cannabis Administration, et al.,* Case No. 1:24-cv-00273[10], the plaintiff in *Jensen* was seeking to force the State of Maryland to issue her an unlimited cannabis dispensary license for the purpose of engaging in a Federally illegal enterprise in interstate commerce. As a matter of factual distinction, Plaintiffs herein do not seek a license to engage in the sale of cannabis in violation of Federal law. Rather, the Plaintiffs wish only to continue to engage in the Federally lawful business of selling Hemp Products within the State of Maryland. This Court can and should decide the case on the merits, as Plaintiffs assert not the right to a Federally illegal business but to a Federally legal one, which has been co-opted by an illegal State of Maryland licensing regime.

**<ins>Decisions by other courts</ins>**

The First Circuit Court of Appeals has held that geographical discrimination against out of state persons or entities is a violation of the dormant commerce clause, in *Northeast Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2024). In that case, a requirement that officers or directors of a company engaged in the sale of cannabis in Maine be Maine residents was found to be unconstitutional.

In that case, the First Circuit Court of Appeals noted:

> The Commerce Clause of the U.S. Constitution provides that "Congress shall have [the] [p]ower ... [t]o regulate Commerce ... among the several States." U.S. Const. Art. I, § 8, cl. 3. The Supreme Court of the United States has long construed the Commerce Clause to be not only an affirmative grant of authority to Congress to regulate interstate commerce but also a negative, "self-executing limitation on the power of the [s]tates to enact laws [that place] substantial burdens on [interstate] commerce." [Cleaned Up]. . . [t]hus, the negative aspect of the Commerce Clause in and of itself protects interstate commerce from "the evils of 'economic isolation' and protectionism" that

---

[10] This case has been appealed to the Fourth Circuit Court of Appeals, Case No. 24-1216 (case submitted on January 28, 2025, but no decision to date),

state regulation otherwise could bring about. City of Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). . .

. . . The defendants also do not dispute that, at least with respect to a lawful market, "where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." City of Philadelphia, 437 U.S. at 624, 98 S.Ct. 2531. Finally, the defendants do not dispute that they cannot show that Maine's residency requirement, if it were applied to a lawful market, would be narrowly tailored to serve a legitimate local purpose, because they agree that, as applied to such a market, the requirement would "basically [be] a protectionist measure," id. at 624, 98 S.Ct. 2531, that would both "discriminate[ ] against" and "unduly burden[ ] interstate commerce," Gen. Motors Corp., 519 U.S. at 287, 117 S.Ct. 811.

*Id.* at 545, 546.

Similarly, in *Lowe v. City of Detroit*, 544 F.Supp.3d. 804 (E.D. Mich. 2021), the court found as follows in respect to a challenge to the requirement of Detroit residency for purposes of cannabis licensing:

The Ordinance's facial favoritism toward Detroit residents of at least 10-15 years embodies precisely the sort of economic protectionism that the Supreme Court has long prohibited. *See Davis*, 553 U.S. at 337-38, 128 S.Ct. 1801 (quoting *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273-74, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988)). The City of Detroit thus bears the burden of demonstrating that the Ordinance's discriminatory provisions "advance[ ] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Davis*, 553 U.S. at 338, 128 S.Ct. 1801. The City has failed to meet this burden.

The issue of Federally lawful hemp specifically, as opposed to Federally illegal cannabis, was also addressed in *Loki Brands, LLC v. Platkin*, 2024 WL 4457485 (Dist. N.J. 2024):

The dormant Commerce Clause 'prohibits the states from imposing restrictions that benefit in-state economic interests at out-of-state

interests' expense, thus reinforcing the principle of the unitary national market.' " *Am. Trucking Ass'ns v. Whitman*, 437 F.3d 313, 318 (3d Cir. 2006) (quoting *Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002)) (*Cloverland I*). The dormant Commerce Clause "therefore prohibits a state from impeding free market forces to shield in-state businesses from out-of-state competition." *Id.*

The State of Maryland's residency and geographical distinctions, which are far more onerous and even less related to legitimate state goals than the laws challenged in Maine, Michigan, and New Jersey, therefore not only violate the equal protection and due process clauses of the United States Constitution, but also the dormant commerce clause.

The hemp processors and manufacturers, such as Plaintiffs South Mountain Microfarm, LLC, Endo Production Company, LLC, and J. Wyand, Inc., wish to sell THC infused beverages and other THC products in the State of Maryland, but are kept out of the market by the protectionist regime promulgated by the State.

### 3.    Unlawful Enforcement Actions against hemp retailers

The State of Maryland's Alcohol, Tobacco and Cannabis Commission has undertaken a campaign of terror against hemp retailers, while recruiting local law enforcement agencies to cooperate in this effort.

COMAR 15.07.15.01 specifically provides a process for delineating between hemp and cannabis, with a specific testing timeframe. This is because it is well known that Hemp Products and cannabis products vary in composition based upon age, exposure to heat and sunlight, and other environmental variables. (See Affidavit of Levi Sellers, Exhibit D). The 0.3% Delta 9 THC threshold was specifically chosen as a reasonable amount at which to determine the legal status of the plant within 30 days prior to harvest. If a plant tests at that time with less than 0.3% Delta 9 THC, then it is hemp. If it tests at a higher amount, it is deemed cannabis. The products

sold by the hemp retailers, whether those products were grown in the State of Maryland or outside the State of Maryland, are always sold pursuant to a certificate of analysis by a qualified laboratory that has tested the product 30 or fewer days before harvest.

However, the Maryland Alcohol, Tobacco and Cannabis Commission, at the request of the Maryland Cannabis Administration, has now taken a position contrary to Maryland regulations, and is seizing for testing products from the shelves of hemp retailers. Law enforcement agencies in Baltimore City and Harford County has been recruited for these efforts, but the origin of the enforcement is the agency defendants named in this case. In some cases, law enforcement officers have offered nothing more than a "sight and smell" test before seeking and receiving search warrants. It is however impossible to tell by sight or smell whether a Cannabis Sativa product is hemp flower or cannabis under the Cannabis Reform Act or under COMAR. This is a process akin to a law enforcement officer claiming he can tell by smelling the tailpipe of an automobile whether it would pass emissions testing. (Affidavit of Levi Sellers, Exhibit D).

<u>Lockout from METRC system and<br>the social equity market share requirement</u>

The State of Maryland has falsely claimed during the state court preliminary injunction hearing that the hemp retailers can sell hemp products directly to the state licensed dispensaries. This was not true at that time, and has been further aggravated by the passage of the amendments to the Cannabis Reform Act in 2025. The new amendments both limit wholesale sales of THC infused beverages to those who have a Maryland cannabis license, and in addition, also require that retailers obtain 25% of their products from "social equity" licensees. This is a clearly discriminatory and unfair market practice in violation of the dormant commerce clause and the equal protection clause of the United States Constitution. (Affidavit of Levi Sellers,

Exhibit D).

Therefore the Plaintiffs are likely to prevail upon the merits.

> **B.      The Plaintiffs have already suffered, and will continue to suffer irreparable harm without an injunction**

The Plaintiffs are faced with the onerous prospect of not being able to sell the same products sold by the state licensed dispensaries, such as chocolates, gummies, and THC infused beverages. And now Plaintiffs are facing the prospect of unfair enforcement proceedings, including prospective criminal charges, which the Defendants have been pursuing despite the plain language of COMAR 15.01.17.10. There is no way for the Plaintiffs to continue in business under the present regime of product restrictions, restraint on interstate commerce, and unfair harassment based upon state laws that are not equally applied to the state dispensaries but are instead discriminatorily and unfairly brought to bear against the Plaintiff hemp sellers.

In *Leaders of a Beautiful Struggle v. Baltimore Police Dept*., 2 F.4th 330, 346, (4th Cir. 2021) the Fourth Circuit Court of Appeals found that where there is a likely constitutional violation, irreparable harm is presumed. *See, e.g. Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. 2020) ("In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm."), and *Am. Trucking Associations*, 559 F.3d at 1059.

> **C.      Balance of Equities Favors Plaintiffs**

This Court has many times found, and the Fourth Circuit has affirmed, that a "state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.'" *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (quoting *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013)).

D.    **The public interest favors an injunction**

"[I]t is well-established that the public interest favors protecting constitutional rights."

*Leaders of a Beautiful Struggle*, 2 F.4th at 346. "[T]he harm to defendants if an injunction is

granted is virtually nonexistent. Compliance with the law is not a cognizable hardship on a

defendant." *Wilson v. Thomas*, No. 5:14-CV-85-BO, 2014 WL 7405462, at *3 (E.D.N.C. Dec.

23, 2014). See also Lowe, 544 F. Supp. 3d. at 816, "[T]he public interest is best served by

enjoining the enforcement of an ordinance that is likely unconstitutional."

## RELIEF REQUESTED

The Plaintiffs therefore pray:

A.    That this Court issue a temporary restraining order and preliminary injunction

that the Defendants must treat anyone in the business of selling Hemp Products before July 1,

2025, in the same way as they treat the State licensed Cannabis dispensaries, with all the same

rights and privileges attaining to the state issued cannabis license, and,

B.    In the alternative, that the Defendants be enjoined from enforcing the present

Cannabis Reform Act against those selling hemp products that are Federally lawful and are

derived from Hemp Products, as provided by COMAR 15.01.17.10; and,

C.    That this Court enter a temporary restraining order and preliminary injunction

that affirms the analysis of hemp products in accordance with the State of Maryland's own

COMAR 15.01.17.10, that if tested 30 days or fewer preharvest, and with the issuance of a

certificate of analysis by a reliable laboratory, that a product shall be deemed hemp and not

cannabis and that to do otherwise is a violation of the equal protection clause and due process

clause of the United State Constitution; and,

D.    That this Court enter a temporary restraining order and preliminary injunction

declaring that there shall be an interstate market in Federally lawful hemp infused beverages and other Hemp Products, without regard for possession of a State issued cannabis license; and,

      E.     That this Court enter a temporary restraining order and preliminary injunction against the Defendants issuing any additional cannabis licenses until the conditions of such issuance of licenses are determined to be fair and lawful; and,

      F.     That this Court enter a temporary restraining order and preliminary injunction that the hemp retailers and the state cannabis licensees must be treated equally with state dispensaries in regard to the sale of Federally lawful hemp products.

Respectfully Submitted,


    __s/Nevin L. Young_____
    Nevin L. Young
    Fed. Bar ID No. 28604
    170 West Street
    Annapolis, Maryland 21401
    Telephone: 410-353-9210
    Email: nevinyounglaw@gmail.com


    _/s/Carlos M. Recio_____
    Carlos M. Recio
    Fed. Bar ID. No. 01294
    1016 7th Street SE
    Washington, D.C. 20003
    Telephone:   202-293-5690
    Facsimile:   202-543-0770
    Email:crecio@reciolaw.com