IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**CHARM CITY HEMP, LLC,** *et al.,*

    *Plaintiffs,*

v.

**GOVERNOR WES MOORE,** *et al.*,

    *Defendants.*

Civil No.: 1:25-cv-01744-JRR

## MEMORANDUM OPINION

Pending now before the court is Defendant Richard Worley's Motion to Dismiss. (ECF No. 22; the "Motion.") No hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be granted.

### I.    BACKGROUND[1]

In view of the fulsome background set forth in the court's memorandum opinion ruling on the motion at ECF No. 6 (docketed on even date herewith and incorporated herein by reference), the court relays here only the factual background relevant to Plaintiff's claims against Defendant Worley.

Plaintiffs—a collection of hemp farmers, hemp retailers, an advocacy organization formed on behalf of hemp farmers, and a consumer of hemp products—initiated the instant action on June 2, 2025. (ECF No. 1.) In the Complaint, Plaintiffs allege that Defendants—the State of Maryland, the Governor of Maryland, the Maryland Cannabis Administration and its executive director, and the Maryland Alcohol, Tobacco, and Cannabis Commission and its executive director

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

(collectively, the "State Defendants") and Defendant Worley, the Commissioner of the Baltimore City Police Department ("BPD")—violated their rights under the Fourteenth Amendment and the dormant Commerce Clause. *Id*.

In short, Plaintiffs allege that the definition of hemp as set forth in the Maryland Cannabis Reform Act ("CRA") requires them to obtain recreational cannabis licenses to continue to grow and sell their hemp products. *Id*. ¶ 32. Plaintiffs assert that the CRA's criteria for licensure are unconstitutionally discriminatory. In addition to the licensing criteria, Plaintiffs insist that the CRA's provisions limiting the number of recreational cannabis licenses, awarding the licenses by lottery, requiring applicants to submit business development plans and diversity statements, and the Maryland Cannabis Administration's ("MCA") limitation of access to a cannabis tracking software to licensees also violate Plaintiffs' rights under the Fourteenth Amendment and dormant Commerce Clause. *Id*. at pp. 32–39. Plaintiffs' Complaint fails to specify which claims are brought against which Defendants; more acutely, the Complaint sets forth zero factual allegations connecting the BPD or Defendant Commissioner Worley to the challenged Maryland state cannabis laws and regulations.

Plaintiffs allege that in the weeks leading up to the filing of this action, local law enforcement agencies in Baltimore City and Harford County began "a campaign of unlawful searches, seizures, and enforcement actions against hemp retailers . . . related to the sale of hemp flower." *Id*. ¶ 92. Officers allegedly searched and seized product from "several hemp retailers in Baltimore City" and, in at least one instance, brought criminal charges for the sale of cannabis based on lab analysis of the seized product. *Id*. ¶ 93. Plaintiffs do not allege they were subject to any search, seizure, or criminal action. Instead, they assert that "Plaintiffs who engage in the sale of hemp flower have a reasonable apprehension that they may be targeted for similar unlawful

searches, seizures and enforcement actions, and seek an injunction and declaratory judgment that such seizures are unlawful." (ECF No. 1 ¶ 98.) Plaintiffs' allegations about these searches and seizures are the only mention of Baltimore law enforcement in the Complaint, so the court is left to assume that Plaintiffs' claims against Defendant Commissioner Worley arise from these alleged acts.

In the Complaint, Plaintiffs set forth four causes of action:

> Count I: Declaratory Judgment and Injunctive Relief Violation of Rights to Equal Protection of the Law Under Fourteenth Amendment (Discrimination in Ability to Acquire a License) And Under 42 U.S.C. § 1983;
>
> Count II: Declaratory Judgment and Injunctive Relief Violation of Right to Due Process of Law Under Fourteenth Amendment and Violation of Civil Rights Pursuant To 42 U.S.C. § 1983;
>
> Count III: Declaratory Judgment and Injunctive Relief Violation of Dormant Commerce Clause and Violation of Civil Rights Under 42 U.S.C. § 1983; and
>
> Count IV: Taking Without Just Compensation Under Fourteenth Amendment of the United States Constitution and Violation of Civil Rights Pursuant to 42 U.S.C. § 1983.

In each cause of action, Plaintiffs seek declaratory judgment that "[t]he selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, is in violation of" the equal protection requirements and due process requirements of the Fourteenth Amendment, the dormant Commerce Clause (*id.* at pp. 34, 35, 37), and "has resulted in the unlawful search and seizure or reasonable apprehension of search and seizure of Plaintiff's property." (*Id.* at p. 39.) In Count IV, Plaintiffs also seek monetary damages.

After filing the Complaint, Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction ("PI"). (ECF No. 6; the "PI Motion".) By agreement, the parties collapsed

the TRO and PI motions and set a briefing schedule. (ECF Nos. 18, 21.) Pursuant to the agreed upon schedule, the State Defendants' filed their opposition to the PI Motion (ECF No. 20), and Defendant Worley filed the instant Motion (ECF No. 22).

## II. **LEGAL STANDARD**

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true,

must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. <u>ANALYSIS</u>

#### A. Standing

Defendant Worley does not raise a standing challenge in the Motion. The issue of standing, however, may be raised at any time, including *sua sponte* by the court. If a party does not have standing to sue, the court lacks subject matter jurisdiction and must dismiss the action. *See PEM Entities LLC v. Cnty. Of Franklin*, 57 F.4th 178, 182 (4th Cir. 2023) (instructing "the court may not issue any decision on the merits without confirming that standing exists.").

As set forth in detail in the memorandum opinion on the PI Motion, to establish standing:

> First, the plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Dep't. of Educ v. Brown*, 600 U.S. 551, 561 (2023) (citations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public," cannot establish an "injury in fact." *Carney v. Adams*, 592 U.S. 53, 59 (2020). Plaintiffs "must demonstrate standing 'with the manner and degree of evidence' required at the relevant 'stage[] of the litigation.'" *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (quoting *Lujan*, 504 U.S. at 561).

5

Here, accepting Plaintiffs' allegations as true (including all reasonable inferences therefrom), Plaintiffs allege no concrete or imminent injury from BPD's searches of hemp retailers. Plaintiffs allege "several hemp retailers in Baltimore City have been the subject of search and seizure warrants," but nowhere do they aver that any Plaintiff was subject to, or otherwise concretely impacted by, a search. (ECF No. 1 ¶ 93.) Instead, Plaintiffs vaguely refer to their "reasonable apprehension that they may be targeted for similar unlawful searches, seizures and enforcement actions." *Id*. ¶ 98. By this logic, any civilian could sue any police officer based on a subjective concern that someday they may be subject to allegedly unlawful police action. There can be no question this is not the concrete and actual injury standing requires.

Plaintiffs lack standing to challenge the alleged "selective enforcement of erroneous testing standards" by BPD, as they have suffered no loss, damage, or other injury related to BPD search and seizure activity described in the Complaint, and they lodge no allegation that any such injury is imminent. As the only claims against Defendant Worley arise from these searches, Plaintiffs lack standing to pursue their claims against him. Accordingly, the Complaint will be dismissed as against Defendant Worley.

B.  *Monell* **Liability**

Notwithstanding the court's determination that Plaintiffs lack standing to sue Defendant Commissioner Worley, the court addresses Defendant Worley's arguments in the Motion, and Plaintiffs' responses to same.

Plaintiffs sue Defendant Worley in his official capacity as Commissioner of BPD.[2] Plaintiffs' claims thus proceed as if they named BPD. *Kentucky v. Graham*, 473 U.S. 159, 166

---

[2] In their response in opposition to the Motion, Plaintiffs allude to potential amendment of their Complaint to name Defendant Worley in his personal capacity as well as his official capacity. (ECF No. 28 ¶ 5.) Federal Rule of Civil Procedure 15 allows for amendment of a complaint in two circumstances: (i) as a matter of course within 21 days after service of a motion under Rule 12(b), or (ii) with the opposing party's written consent or the court's leave. FED. R.

(1985) (holding that "[a]s long as the government entity receive notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). This court has determined, and often reaffirmed, that BPD is "subject to suit for violation of § 1983 because it 'is too interconnected with the government of the City' to constitute a state agency." *Johnson v. Balt. Police Dep't,* No. CV RDB-23-2215, 2025 WL 35926, at *15 (D. Md. Jan. 6, 2025) (quoting *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003)); *see also*, *e.g.*, *Nicholson v. Balt. Police Dep't*, No. DKC-20-3146, 2021 WL 1541667 at *7 (D. Md. Apr. 20, 2021) (holding that "the BPD, while a state entity under Maryland law, is considered a municipal entity subject to suit for purposes of § 1983.").

A local government entity, such as BPD, may be liable for deprivation of federal rights "[o]nly in cases where [it] causes the deprivation 'through an official policy or custom.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[In § 1983], Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "[A] viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Green v. Obsu*, Civ. No. ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) (citations omitted). To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). "To hold a

---

Civ. P. 15(a). Plaintiff filed the Motion on July 7, 2025, more than 21 days ago. Plaintiffs' vague statement that they "may ultimately" amend their pleading to name Defendant Worley in his personal capacity has no bearing on the instant Motion or the court's evaluation of same.

municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

To satisfy the first element, a party may show the existence of an unconstitutional "policy" or "custom" in one of the following ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle*, 326 F.3d at 471.

Plaintiffs expressly describe BPD's "involvement" in the allegedly unconstitutional discriminatory enforcement of cannabis regulation as "not undertaken of the [BPD's] own initiative, but . . . specifically requested by the Maryland Cannabis Administration and/or the Maryland Alcohol, Tobacco and Cannabis Commission." (ECF No. 1 ¶ 95.) Plaintiffs make no allegation that the allegedly unconstitutional "selective enforcement of erroneous testing standards" was a BPD policy, resulted from a failure to train, or was part of a persistent and widespread practice. Similarly, they do not allege that any BPD policy caused the alleged constitutional violation; rather, Plaintiffs expressly disclaim that BPD participated in the allegedly unconstitutional actions of its own initiative. Accordingly, Plaintiffs fail to state a *Monell* claim for municipal liability under § 1983.

In response to the Motion, Plaintiffs assert that this court should not dismiss the Complaint as against Defendant Worley, because his arguments are "focused upon whether he would bear monetary liability for any judgment," whereas "the claims here. . . are for injunctive relief." (ECF

No. 28 at p. 2.) That Plaintiffs have moved for a PI is of no moment. For the reasons explained above, Plaintiffs fail to state a claim against Defendant Commissioner Worley.

In response to the Motion, Plaintiffs cite *Dipino v. Davis*, 354 Md. 18 (1999), to argue that "Defendant [Worley] is implementing laws and policies of the State of Maryland, and under *Dipino*… he is still subject to the entry of an order for injunctive relief, regardless of whether he or the City of Baltimore might ultimately be liable for monetary damages." (ECF No. 28 at p. 2.) Plaintiffs misapprehend the point. Whether Plaintiffs have adequately pled a *Monell* claim is not about who might be responsible for damages; it's about whether this action may proceed against Defendant Worley in the first instance.[3] Further, in *Dipino*, it was unclear whether the plaintiffs named the defendants in their personal or official capacities; here, it is clear. Defendant Worley is named in his official capacity only.

---

[3] The *Dipino* court explained:

> An official-capacity action may proceed only to the extent that the official's conduct "implement[s] governmental law, policy, or custom," *i.e.,* the deprivation underlying the § 1983 claim is "caused by a statute, regulation, policy or custom of the governmental entity" that the official was implementing. *Ashton v. Brown, supra,* 339 Md. at 111–12, 660 A.2d at 468. As the Court made clear in *Kentucky v. Graham, supra,* 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 121, an official capacity action is really an action against the governmental entity, of which the official was merely an agent, and it lies when the entity itself was the "moving force" behind the deprivation, when its policy or custom played a part in the deprivation. The good faith immunity assertable in a personal-capacity action is not available in an official-capacity action, but the entity may defend by showing that "the official whose conduct is in question acted in a manner contrary to the policy or custom of the entity." *Johnson v. Board of County Com'rs for County of Fremont,* 85 F.3d 489, 493 (10th Cir.1996). Because in an official-capacity action it is the entity's policy that was wrongful and caused the harm, the plaintiff may look only to the entity, and not to the assets of the official, to satisfy any damage award, at least when the entity receives notice of the action and has an opportunity to defend. Punitive damages are not allowed in an official-capacity action.

354 Md. at 46-47.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 22) shall be granted.

Date: July 30, 2025

/S/
_____
Julie R. Rubin
United States District Judge