IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARM CITY HEMP, LLC, *et al.*,

      *Plaintiffs*,

      **v.**

GOVERNOR WES MOORE, *et al.*,

      *Defendants*.

Civil No.: 1:25-cv-01744-JRR

## MEMORANDUM OPINION

Pending before the court are State Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 34; the "Motion to Dismiss") and Plaintiffs' Motion for Leave to File First Amended Complaint. (ECF No. 44; the "Motion to Amend.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, by accompanying order, the Motion to Dismiss will be granted and the Motion to Amend will be denied. The court addresses the Motion to Dismiss and Motion to Amend in that order.[1]

## I.    BACKGROUND[2]

Plaintiffs—a collection of hemp farmers, hemp retailers, an advocacy organization formed on behalf of hemp farmers, and a consumer of hemp products—bring the instant action to enjoin Defendants—the State of Maryland, the Governor of Maryland, the Maryland Cannabis Administration and its executive director, and the Maryland Alcohol, Tobacco, and Cannabis Commission and its executive director (collectively, the "State Defendants")—from enforcing various provisions of Maryland law and regulations relating to hemp and cannabis products.

---

[1] In accordance with the standards applicable to the instant motions, throughout this opinion, the court revisits, and often restates, portions of its memorandum opinion at ECF No. 30 on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

[2] For purposes of resolving the Motion to Dismiss, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

### A. Parties

Plaintiff Maryland Hemp Coalition, Inc. ("MHC") is a non-profit member organization of hemp farmers. MHC's mission is to "forward the cause of farmers of hemp in the State of Maryland." (ECF No. 1 ¶¶ 3–4.)

Plaintiff Charm City Hemp, LLC, d/b/a Charm City Hemp, is a Maryland registered Limited Liability Company and retailer of hemp products sold in Baltimore, Maryland.[3] *Id*. ¶ 5. Charm City Hemp does not have a license, as required by Maryland law, to engage in retail sales of cannabis products. *Id*.

Plaintiff Endo Productions Company is a Pennsylvania Limited Liability Company that produces and distributes Tetrahydrocannabinol ("THC")-infused beverages. Endo Productions Company markets and distributes these beverages in Maryland, but it does not have a Maryland cannabis license. *Id*. ¶ 6.

Plaintiff J. Wyand, Inc., d/b/a Simple Pleasures, is a West Virginia corporation with a Maryland registered trade name and a retail store selling hemp-derived products in Hagerstown, Maryland. Simple Pleasures does not have a Maryland cannabis license. *Id*. ¶ 7.

Plaintiff Ira Cooke is an individual customer of Simple Pleasures. *Id*. ¶ 13.

Plaintiff South Mountain Microfarm, LLC, is a Maryland agricultural business that grows hemp plants, processes hemp plants, and distributes hemp-derived products to retailers in Maryland. South Mountain Microfarm also retails its products directly to consumers. Its products include hemp-derived beverages. It does not have a State of Maryland cannabis license. *Id*. ¶ 8.

---

[3] In the Motion to Dismiss, State Defendants assert that as of August 8, 2025, Plaintiff Charm City Hemp, LLC, was not in good standing as a Maryland LLC and, thus, was ineligible to bring suit in federal court. (ECF No. 34-1 at p. 18 n. 9.) *See United Corrosion Control, LLC v. Carboline Co.*, No. 22-1423, 2023 WL 8712048, at *2–3 (4th Cir. Dec. 18, 2023) (holding that under the Maryland LLC Act, an LLC that forfeits its right to do business in Maryland may not prosecute a lawsuit in federal court.) The court conducted a search for Charm City, LLC, in the Maryland Business Entity Search of which it is entitled to take judicial notice as a government public website https://egov.maryland.gov/businessexpress/entitysearch (last visited March 26, 2026) [https://perma.cc/SEP9-8KKK]. The search results indicate that Plaintiff is currently in good standing, which has retroactive application for this purpose. As such, Charm City, LLC is not precluded from being a Plaintiff in this action on that basis.

Plaintiff Peace of Sunshine, LLC, d/b/a Peace of Sunshine, is a Maryland LLC that retails hemp products in Catonsville, Maryland, without a Maryland State license to do so. (ECF No. 1 ¶ 9.)

Plaintiff Straf, LLC, d/b/a Peace of Crofton, is a Maryland LLC that retails hemp products in Crofton, Maryland, without a Maryland license to do so.  *Id*. ¶ 10.

Plaintiff Cannon Apothecary, LLC, d/b/a Cannon Ball Dispensary, is a Maryland LLC that retails hemp products in Lusby, Maryland, without a Maryland license to do so.  *Id*. ¶ 11.

Plaintiff The Unlimited Experience Holding Company, LLC, d/b/a The Southern Maryland Experience, is a Maryland LLC that retails hemp products in Hollywood, Maryland, without a Maryland license to do so.  *Id*. ¶ 12.

Plaintiff Daniel Simmonds is an individual who previously owned a business by the name of Georgetown Hemp.[4]  (ECF No. 1 ¶ 65.)

Defendants are Wes Moore, Governor of Maryland; the Maryland Cannabis Administration; the Executive Director of the Maryland Cannabis Administration; the Maryland Alcohol, Tobacco, and Cannabis Commission; the Executive Director of the Maryland Alcohol, Tobacco, and Cannabis Commission (collectively; the "State Defendants"); and "various other persons who either have regulatory authority under the State of Maryland's cannabis licensing laws, or who have taken unlawful action in furthering the enforcement of the State of Maryland's cannabis licensing regime."  (ECF No. 1 ¶ 14.)  All individual Defendants are sued in their official capacities only.  *Id*.[5]

---

[4] Plaintiffs appear to have mistakenly excluded Plaintiff Simmonds from the section describing the parties in this action. (ECF No. 1 ¶¶ 3–14.)  In the factual allegations of the Complaint, Plaintiffs provide that Simmonds' prior business, Georgetown Hemp, was forced out of business, and Simmonds' planned partnership with another business failed, due to the new cannabis licensing regime in Maryland.  *Id.* ¶ 65.  Plaintiffs claim that during this period, Simmonds produced little to no revenue.  *Id.*

[5] By memorandum opinion and order at ECF Nos. 32 and 33, the court granted the motion to dismiss of Defendant Richard Worley, Commissioner of the Baltimore City Police Department (ECF No. 22); he is no longer a Defendant in this action.

B.  **Statutory and Factual Background**

Pursuant to the Controlled Substances Act ("CSA"), the use, distribution, manufacture, and possession of cannabis, also known as marijuana, is federally illegal.  21 U.S.C. § 801 *et seq*.  Cannabis and hemp are both derived from the Cannabis sativa L. plant.  Importantly, since 2018, the distribution, manufacture, and possession of hemp, defined as a Cannabis Sativa plant with a delta-9 THC concentration of not more than 0.3 percent, is not prohibited by federal law.  7 U.S.C. § 1639o.  The Agricultural Improvement Act (known as the "Farm Act") distinguishes hemp from cannabis and authorizes states to implement their own agricultural programs related to the production of hemp products.  *Id*. § 1639p(a)(3).

After passage of the Farm Act, Maryland implemented its own agricultural plan for hemp production which went into effect on November 1, 2020.  (ECF No. 1 ¶ 21.)  Plaintiffs assert from November 1, 2020, until the passage of the Cannabis Reform Act in 2023, Maryland had no laws regulating the sale or distribution of any THC products with a delta-9 THC concentration of less than 0.3 percent, and such products were defined as "industrial hemp."  *Id.* ¶ 22.  Prior to passage of the Cannabis Reform Act, Plaintiff retailers sold products containing or composed mostly of delta-8 THC as opposed to delta-9 THC (which they contend is the most potent form of THC).  *Id.* ¶ 23.

1.  *The Maryland Cannabis Reform Act (2023)*

In 2023, the Maryland legislature passed the Cannabis Reform Act ("CRA") that comprehensively overhauled cannabis and hemp regulation in the State.  Pertinent to this action, the CRA amended the Maryland Code to implement new standards for defining hemp, provide for recreational cannabis retail, growing, and processing licenses, and create the Maryland Cannabis Administration ("MCA") to regulate the cannabis industry in the state.[6]

---

[6] Previously, an entity called the Maryland Medical Cannabis Commission oversaw licensing and regulation of medical marijuana distributors.  Maryland legalized medical marijuana in 2014.

As it relates to the hemp products Plaintiffs manufacture and retail, the CRA provides:

> (b)(1) A person may not sell or distribute a product intended for human consumption or inhalation that contains more than 0.5 milligrams of tetrahydrocannabinol per serving or 2.5 milligrams of tetrahydrocannabinol per package unless the person is licensed under § 36-401 of this title
>
> .        .        .
>
> (d)(1) Notwithstanding subsection (b) of this section and subject to paragraph (2) of this subsection, it is not a violation of this section for a person to sell or distribute a hemp-derived tincture intended for human consumption that contains:
>
>> (i) a ratio of cannabidiol to tetrahydrocannabinol of at least 15 to 1; and
>> (ii) 2.5 milligrams or less of tetrahydrocannabinol per serving and 100 milligrams or less of tetrahydrocannabinol per package.
>
> (2) To sell or distribute a hemp-derived tincture under this subsection, a person must provide, as required by the Administration, tincture samples for the purpose of testing to determine chemical potency and composition levels and to detect and quantify contaminants.
>
> (e) A person who violates subsection (b) of this section:
>
> (1) may be charged by a citation; and
> (2) is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000.

MD. CODE ANN., ALC. BEV. § 36-1102(b)–(e).  Plaintiffs allege that their products, "while being derived from hemp and not marijuana, and therefore lawful under Federal Law pursuant to the 2018 Farm Bill, cannot meet the new standard for maximum milligrams of THC imposed by" the CRA.  (ECF No. 1 ¶ 30.)  Accordingly, "the Plaintiff retailers are required under Maryland's Cannabis Reform Act to obtain a recreational cannabis license under the Act."  Id. ¶ 32.

Pursuant to the CRA, recreational cannabis licensing proceeded in two rounds: the first to begin before January 1, 2024, and the second to begin after May 1, 2024. MD. CODE ANN., ALC. BEV. § 36-404(a)(1), (2).[7]

> (d)(1) For the first round, subject to paragraphs (2) and (3) of this subsection, the Administration shall enter each social equity applicant that meets the minimum qualifications established by the Administration into a lottery and issue to social equity applicants not more than:
>
> (i) for standard licenses:
> 1. 20 grower licenses;
> 2. 40 processor licenses; and
> 3. 80 dispensary licenses;
>
> (ii) for micro licenses:
> 1. 30 grower licenses;
> 2. 30 processor licenses; and
> 3. 10 dispensary licenses; and
>
> (iii) 10 incubator space licenses.
>
> (2) The Administration shall determine whether an application meets the minimum qualifications for the lottery on a pass-fail basis, as determined by the Administration, after evaluating:
>
> (i) a detailed operational plan for the safe, secure, and effective cultivation, manufacture, or dispensing of cannabis;
>
> (ii) a business plan demonstrating a likelihood of success and sufficient business ability and experience on the part of the applicant, and providing for appropriate employee working conditions; and
>
> (iii) a detailed diversity plan.
>
> (3)(i) If an applicant seeking social equity status is from out of state, the applicant must submit with the application evidence that the applicant meets the criteria for a social equity applicant established under this title before the Administration may consider the application.
>
> (ii) First round application submissions for all license types are limited to social equity applicants.

---

[7] Per the CRA, on or before July 1, 2023, medical growers, processors, and dispensaries could convert their licenses to licenses to operate medical and recreational cannabis businesses. MD. CODE ANN., ALC. BEV. § 36-401(b)(1). No Plaintiff was previously licensed as a medical marijuana grower, processor, or dispensary.

*Id.* § 36-404(d)(1)–(3).

"Social equity applicants" are defined as:

> [A]n applicant for a cannabis license or cannabis registration that:
> (1) has at least 65% ownership and control held by one or more individuals who:
>
> (i) have lived in a disproportionately impacted area for at least 5 of the 10 years immediately preceding the submission of the application;
> (ii) attended a public school in a disproportionately impacted area for at least 5 years; or
> (iii) for at least 2 years, attended a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant; or
> (2) meets any other criteria established by the Administration.

*Id*. § 36-101(ff). "Disproportionately affected area" is defined as "a geographic area identified by the office of social equity that has had above 150% of the state's 10-year average for cannabis possession charges." *Id*. § 36-101(r). Plaintiffs claim the first-round licensing provision is a "monopolized licensing scheme thinly disguised as being focused upon 'social equity[.]'" (ECF No. 1 ¶ 36.) Additionally, they assert "[t]he social equity factors and geographical factors considered for social equity status have no rational relationship to any public safety or health concerns[.]" *Id*. ¶ 39.

Following passage of the CRA, some, but not all, Plaintiffs brought an action in the Circuit Court for Washington County, Maryland, on July 24, 2023 (Case No. C-21-CV-23-348). (ECF No. 1 ¶ 57.) The State court action plaintiffs alleged violations of state law only. *Id*. ¶ 58. In that case, the Circuit Court entered a preliminary injunction enjoining the State from "enforcing Maryland Code Ann. Alc. Bev. § 36-1102 against any person who was already lawfully in the business of selling hemp derived products prior to July 1, 2023." (Ex. C, ECF No. 1-4.) This injunction did not, however, enjoin the State from proceeding with the licensing scheme described in the CRA. State Defendants appealed, and the State court action plaintiffs

subsequently cross-appealed, the preliminary injunction order to the Appellate Court of Maryland on October 13, 2025 (Case No. 1590).[8]

On September 9, 2025, the Maryland Appellate Court issued an opinion reversing in part and affirming in part the judgment of the Circuit Court.  The Appellate Court reversed the Circuit Court's preliminary injunction against the enforcement of MD. CODE ANN. ALC. BEV. § 36-1102 and affirmed the Circuit Court's decision to permit the issuance of licenses under the CRA.  On October 1, 2025, the State court action Plaintiffs filed a petition for writ of certiorari with the Supreme Court of Maryland (Pet. No. 311), which was denied on January 28, 2026.

As part of the first round of licensing, the MCA conducted two lotteries.  (ECF No. 20 at p. 18.)  No Plaintiff applied for the first round of licensing; therefore, none received a first round license.  (ECF No. 1 ¶ 69.)  The second round of licensing will not occur until the State performs and analyzes a disparity study to determine whether remedial measures are required. MD. CODE ANN., ALC. BEV. § 36-404(e)–(g).  At the time Plaintiffs filed this action, the study was ongoing, the terms for accepting license applications for the second round had not yet been set, and the application process had not begun.  (ECF No. 1 ¶ 50.)  To the court's knowledge, at the time of this writing, the disparity study was completed and published by the Maryland Department of Transportation on October 1, 2025.  During a budget hearing regarding the MCA's fiscal year 2027 operating budget, Tabatha Robinson, Executive Director of the MCA, testified that the "MCA is working with counsel to understand the implications of this study as it relates to cannabis licensing and the second round of licensure."[9]

---

[8] The court may take judicial notice of matters in the public record and publicly available information on state and federal government websites. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

[9] *FY 2027 Responses to DLS Operating Budget Analysis and Testimony*, 449th Gen. Assemb., Reg. Sess. (2026) (statement of Tabatha Robinson, Director, Maryland Cannabis Administration), https://dbm.maryland.gov/budget/FY2027Testimony/D23.pdf [https://perma.cc/HH43-YBDX].

### 2. *Senate Bill 215 (2025)*

During its 2025 session, the Maryland General Assembly passed Senate Bill 215. 2025 Md. Law ch. 120. The Bill became law on July 1, 2025, and provides that licenses for on-site cannabis consumption sites shall be awarded through the same process through which second round grower, processor, and dispensary licenses are awarded. 2025 Md. Law ch. 120 § 36-404(g)(iv). Bill 215 does not alter the CRA's provision that the second round of licensing will proceed only after the MCA completes a study as to whether further social equity programs are needed. MD. CODE ANN., ALC. BEV. § 36-404(e)–(g). Accordingly, as with the second round licenses, the application criteria for the on-site consumption site licenses have yet to be determined. In preparation for the licensure of on-site consumption sites, the Bill defines "cannabinoid beverages," the State Defendants submit, for the limited purpose of "clarify[ing] what an on-site consumption site may serve when it becomes operational." *Id*. § 36-101(C-1); ECF No. 20 at p. 21. To be clear, Senate Bill 215 does not alter the licensing procedure for the second round of licensing set forth in the CRA. As of this writing, the second round of licensing has yet to commence, and the MCA has not yet determined the criteria for applying for same.

### 3. *Edible Products and Beverages, Shelf Space Requirement, and Marijuana Enforcement Tracking Regulation and Compliance*

In the Complaint, in addition to their challenge of the CRA's licensing requirements, Plaintiffs challenge the below-described aspects of the CRA and cannabis regulation in Maryland.

First, Plaintiffs allege that Maryland recently changed the regulations regarding edible cannabis products and restricted their sale to licensed dispensaries. (ECF No. 1 ¶ 71, 73.) Per MCA's regulations, to process, sell, or distribute edible cannabis products in Maryland, a licensed processor must obtain a permit from the MCA. COMAR 14.17.13.05A(1). MCA additionally regulates certain qualities of edible cannabis products, including shape and ingredients. COMAR 14.17.13.05(C)(1)–(3); 14.17.13.05E. Maryland also permits the sale

9

of liquid edibles (*i.e.*, THC beverages) subject to certain MCA regulations. COMAR 14.17.13.05D.

Second, Plaintiffs challenge the CRA and MCA regulations regarding dispensaries licensed before December 31, 2022, to ensure that 25% of cannabis products available for retail come from a combination of social equity licensees and licensees that share no common ownership interest or control with the dispensary license holder. (ECF No. 1 ¶ 106.) *See* MD. CODE ANN., ALC. BEV. § 36-410(a)(3). This requirement explicitly concerns cannabis products, and does not mention hemp products or impose similar requirements on the sale of hemp-derived products.

Third, Plaintiffs assert that the State's use of the Marijuana Enforcement Tracking Regulation and Compliance ("METRC") system, and Plaintiffs' inability to use the system as non-licensees, "lock[s] them out from doing legitimate business with state licensed dispensaries, [and] is a violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution." (ECF No. 1 at p. 34.) METRC is a service available to licensed cannabis producers and distributors. If a Maryland cannabis licensee purchased hemp from an un-licensed source, like Plaintiff farmers, the licensee would enter the product into METRC's system. *See* COMAR 14.17.11.03(B)(2) (providing that a processor may acquire hemp from a person licensed to produce hemp by the Maryland Department of Agriculture or the Secretary of the U.S. Department of Agriculture, or an agency of another state pursuant to a hemp production plan that has been approved by the Secretary of the U.S. Department of Agriculture).

### 4. *Spring 2025 Enforcement Actions*

Plaintiffs allege that in the weeks leading up to the filing of this action, local law enforcement agencies in Baltimore City and Harford County, including the Maryland Alcohol, Tobacco, and Cannabis Commission, began conducting "unlawful" searches, seizures, and

brought enforcement actions against retailers of hemp product.  (ECF No. 1 ¶ 92.)  Agents seized product from "several hemp retailers in Baltimore City" and, in at least one instance, brought criminal charges for the sale of cannabis based on lab analysis of the seized product. *Id*. ¶ 93.  Plaintiffs do not allege they were subject to any search, seizure, or criminal action. Instead, they urge that "Plaintiffs who engage in the sale of hemp flower have a reasonable apprehension that they may be targeted for similar unlawful searches, seizures and enforcement actions, and seek an injunction and declaratory judgment that such seizures are unlawful." *Id*. ¶ 98.

## C.  Procedural History

Plaintiffs filed this action on June 2, 2025.  (ECF No. 1.)  The Complaint sets forth the following counts:

> Count I: Declaratory Judgment And Injunctive Relief - Violation Of Rights To Equal Protection Of The Law Under Fourteenth Amendment (Discrimination In Ability To Acquire A License) And Under 42 U.S.C. § 1983;
>
> Count II: Declaratory Judgment And Injunctive Relief - Violation Of Right To Due Process Of Law Under Fourteenth Amendment And Violation Of Civil Rights Pursuant To 42 U.S.C. § 1983;
>
> Count III: Declaratory Judgment And Injunctive Relief - Violation Of Dormant Commerce Clause And Violation Of Civil Rights Under 42 U.S.C. § 1983; and
>
> Count IV: Taking Without Just Compensation Under Fourteenth Amendment Of The United States Constitution And Violation Of Civil Rights Pursuant To 42 U.S.C. § 1983.

(ECF No. 1 at pp. 32–39.)

With each count, Plaintiffs include numerous, distinct requests for declaratory judgment.  These sub-requests at Counts I and II are nearly identical:

> The Plaintiffs pray that this Court enter a declaratory judgment that:
>
> A. The State of Maryland social equity restrictions upon licensure were and are in violation of the equal protection

11

requirements [and due process requirements] of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

B. The State of Maryland numerical restrictions upon licensure were and are in violation of the equal protection requirements [and due process requirements] of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

C. The State of Maryland "lottery system" for licensure is and was in violation of the equal protection requirements [and due process requirements] of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.

D. The selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, is in violation of the equal protection requirements [and due process requirements] of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

E. That the State policies denying access to the METRC system to the Plaintiffs, thereby locking them out from doing legitimate business with state licensed dispensaries, is a violation of the equal protection requirements [and due process requirements] of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

F. The requirement of a "detailed diversity statement" and business plan as part of the licensing review process, without any oversight to prevent arbitrary or capricious determinations of eligibility, are in violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

G. That the State policies allowing the sale of Federally lawful THC infused beverages, chocolates, and gummies by state licensed dispensaries, but not by the Plaintiffs, are in violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

(ECF No. 1 at pp. 33–34; 35–36.)

At Count III, Plaintiffs seek declaratory judgment that Defendants' restrictions on who may sell and manufacture THC infused beverage products, restrictions on licensure (including numerical restrictions and use of lottery system) as set forth in Counts I and II, "selective enforcement of erroneous testing standards," "State policies denying access to the METRC system to the Plaintiffs and others similarly situated," and "State policies allowing the sale of Federally lawful THC infused beverages, chocolates, and gummies by state licensed dispensaries, but not by the Plaintiffs," are in violation of the dormant Commerce Clause. *Id*. at pp. 37–38.

At Count IV, Plaintiffs also seek a declaratory judgment that:

> A. The Defendants have unlawfully prevented the Plaintiffs from pursuing a lawful business, in violation of their rights, depriving Plaintiffs of a valuable property right in their businesses and incomes; and,
>
> B. The Defendants have unlawfully engaged in the seizure of property of the Plaintiffs and others similarly situated. The Plaintiffs further pray that the Court enter appropriate injunctive relief as to this matter.
>
> C. The Defendants, by restricting who may manufacture Federally lawful THC beverage products for sale in the State of Maryland to state licensed processors, have unlawfully deprived the Plaintiffs and others similarly situated of a valuable property right in their businesses and incomes; and the Plaintiffs further pray that the Court order appropriate injunctive relief.
>
> D. The selective enforcement of erroneous testing standards, contrary to State and Federal Regulations as to hemp flower products, against the hemp retailers and not against state licensed dispensaries, has resulted in the unlawful search and seizure or reasonable apprehension of unlawful search and seizure of Plaintiff's property; and the Plaintiffs further pray that the Court order appropriate injunctive relief.

(ECF No. 1 at p. 39.)

Under each Count, Plaintiffs also seek an award of "actual damages after a jury trial," "punitive damages", "attorneys' fees", and "whatever other relief the justice of the cause may demand." *Id.* at pp. 34, 36, 38, 39.

Following the Complaint, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 6), seeking an injunction as to the first three counts of the Complaint, which the court denied on July 30, 2025. (ECF No. 31.) On July 7, 2025, Defendant Richard Worley filed a Motion to Dismiss (ECF No. 22), which the parties fully briefed, and the court granted on July 30, 2025, dismissing Plaintiffs' Complaint as to Defendant Worley only. (ECF No. 33.)

State Defendants filed the instant Motion to Dismiss on August 11, 2025. (ECF No. 34.) On August 25, 2025, Plaintiffs filed an Amended Complaint without requesting (or obtaining) leave of court.[10] (ECF No. 35.) On the same day, Plaintiffs filed a response to State Defendants' Motion to Dismiss, asserting that their Amended Complaint was filed "as of right" pursuant to Federal Rule of Civil Procedure 15(a)(1) and that it rendered the pending Motion to Dismiss moot. (ECF No. 36.) On August 26, 2025, the court entered an order advising Plaintiffs that they were not entitled to amend as a matter of right pursuant to Rule 15(a)(1) because more than 21 days had passed since the Complaint was served pursuant to Rule 15(a)(1)(A) and more than 21 days had passed since Defendant Worley had filed the first Rule 12(b) motion to dismiss. (ECF No. 37.) Accordingly, the court noted that Plaintiffs could seek leave to file an amended complaint pursuant to Rule 15(a)(2) and granted Plaintiffs until September 9, 2025, to file a supplement to their opposition to State Defendant's Motion to Dismiss, thereby allowing Plaintiffs to submit a substantive response to the motion.

On September 10, 2025, the court granted Plaintiffs an extension of time (until September 16, 2025) to file their supplement. (ECF No. 41.) Plaintiffs filed their supplemental response to the Motion to Dismiss on September 16, 2025. (ECF No. 42.) The supplement

---

[10] Rule 15(a)(1) provides: "A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).

filed by Plaintiffs fails to address the arguments set forth in the instant Motion to Dismiss; instead, Plaintiffs state:

> Since the time of the filing of the State's Motion to Dismiss, there have been several significant decisions by various courts as to the issues raised in this case. The legal landscape as to regulation of cannabis sales is certainly rapidly changing and difficult to predict. The Plaintiffs in this case believe many of those decisions are in error, but also expect that this Court, given the *sua sponte* rejection[11] of the motion for preliminary injunction filed by the Plaintiffs, will rule against the Plaintiffs. This response is filed for purposes of the record upon appeal, and the Plaintiffs do intend to appeal this matter to the Fourth Circuit Court of Appeals.

(ECF No. 42 ¶ 1.)  Plaintiffs also reiterated their intention to file a motion for leave to file an amended complaint, which would "further delineate the standing of the Plaintiffs in this case and the damages incurred by [them]." *Id.* ¶ 5.

On September 24, 2025, Plaintiffs filed the instant Motion to Amend, seeking leave to file a first amended complaint.  (ECF No. 44.)  State Defendants filed an opposition to the Motion to Amend on October 8, 2025.  (ECF No. 45.)  Plaintiffs did not file a reply to State Defendants' opposition.  The court addresses both the Motion to Dismiss and Motion to Amend below.

## II.    LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)[12]

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479

---

[11] The court is unclear what Plaintiffs refer to in describing the court's opinion as "*sua sponte*." The court's memorandum opinion and order (ECF Nos. 30, 31) were issued following fulsome briefing by the parties on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (ECF Nos. 6, 20, 23, 24, 25.)

[12] In addition to Rule 12(b)(1), the Motion to Dismiss invokes review under Rule 12(b)(6); however, because the court grants the Motion under Rule 12(b)(1) grounds only, the court does not set forth the standard applicable when reviewing a motion to dismiss under Rule 12(b)(6).

(D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

State Defendants raise a facial challenge to the court's subject matter jurisdiction, asserting that Eleventh Amendment immunity bars Plaintiffs' claims against them and Plaintiff's Complaint fails to allege facts sufficient to establish Article III standing. (ECF No. 34-1 at pp. 13–21.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

Rule 12(b)(1) also "governs motions to dismiss . . . for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019). The

16

party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (citation omitted).

## B. Federal Rule of Civil Procedure 15(a)

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15(a) counsels that "[t]he court should freely give leave when justice so requires." *Id.* "The Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The Fourth Circuit's policy is 'to liberally allow amendment.'" *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson*, 785 F.2d at 509; *see Oliver v.*

*Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 345 (D. Md. 2018) (noting that "[g]ranting leave to amend [] is the default under Rule 15").

## III.    ANALYSIS

For the reasons set forth below, the court finds that it lacks subject matter jurisdiction over this action because sovereign immunity bars Plaintiffs' claims against State Defendants and, further, because Plaintiffs lack standing to pursue a majority of their claims (Counts I through III).  Moreover, as discussed in detail below, Plaintiffs' proposed amended pleading does not cure these jurisdictional defects.[13]  Accordingly, the court first addresses State Defendants' jurisdictional arguments in the Motion to Dismiss and follows with a discussion of Plaintiffs' proposed amendments.

### A. State Defendants' Motion to Dismiss

#### 1.  *Eleventh Amendment Sovereign Immunity*

First, State Defendants assert that Plaintiffs' claims against them are all barred by Eleventh Amendment sovereign immunity.  (ECF No. 34-1 at pp. 13-16.)  As noted previously, Plaintiffs provide no substantive response to State Defendants' Motion to Dismiss arguments, thus conceding the arguments.  *See Green v. iMentor, Inc.,* No. CV RDB-24-2567, 2025 WL 2299432, at *5 (D. Md. Aug. 8, 2025) (finding that "failure to respond to an opposing party's arguments in a motion to dismiss constitutes abandonment of that claim").  Nevertheless, the court "has an obligation to review the motions to ensure that dismissal is proper."  *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n. 3 (4th Cir. 2014).

---

[13] Indeed, in their Motion to Amend, Plaintiffs offer that their proposed amended pleading does not change the outcome of the Motion to Dismiss; they state: "Plaintiffs appreciate that the State has already filed a motion to dismiss the original Complaint, and a Reply to Plaintiffs' Opposition to the Motion.  However, it is not believed that the proposed changes will make a substantial difference to those arguments, as [the proposed amendments] simply add more detail and clarify some of the facts which may have been unclear in the original pleading, and update certain statements as to the existing state of the of law in light of recent developments.  If the State believes those changes require additional briefing, the Plaintiffs would not object, but it is not believed that the docketing of the First Amended Complaint would require that the matter be briefed again with a new Motion to Dismiss." (ECF No. 44 at ¶ 5.)

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress. *See Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001) (providing that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority" (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) (holding "state sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it"). As explained above, a finding that a defendant enjoys sovereign immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such claim. *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018).

Eleventh Amendment immunity applies to instrumentalities of the state, and to state officials sued in their official capacities. *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, State Defendants indisputably fall into those two categories. Defendants MCA and the Maryland Alcohol, Tobacco, and Cannabis Commission are instrumentalities of the state of Maryland. Defendants the Governor of Maryland, as well as the Executive Directors of the MCA and the MATCC are state officials sued in their official capacities. (*See* ECF No. 1 at p. 3.)

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions). The three exceptions include:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S. Ct. 955, 148 L.Ed.2d 866] (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S. Ct. 899, 157 L.Ed.2d 855] (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 [122 S. Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)).

Plaintiffs assert all claims pursuant to 42 U.S.C. § 1983. (ECF No. 1 at pp. 32–39.) With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits." *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). As to waiver, Maryland "has not waived its immunity under the Eleventh Amendment to suit in federal court[]" or consented to suit in this court. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020) (citing MD. CODE ANN., STATE GOV'T § 12-202(a)); *see also Morgan v. Copper State Univ.*, No. SAG-20-0427, 2021 WL 5280893, at *5 (D. Md. Nov. 12, 2021) (noting "Maryland has not waived its sovereign immunity as it pertains to federal statutory claims."). The only remaining question is whether, pursuant to *Ex parte Young*, Plaintiffs identify and seek "equitable relief from an ongoing violation of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018) *aff'd*, 589 U.S. 248 (2020).

Relevant here, "suits for 'prospective injunctive relief against state officials acting in violation of federal law' are permitted" pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *Eller*, 580 F. Supp. 3d at 168. "Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer is enforcing, or threatening to enforce, an allegedly unconstitutional state law." *Id*. "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an ongoing violation of federal law." *Allen*, 895 F.3d at 354.

Important here, "[t]he *Ex parte Young* exception only permits actions against state officials, not the State itself or its instrumentalities." *Medigrow, LLC v. Natalie M. LaPrade Medical Cannabis Comm.*, 487 F. Supp. 3d 364, 373 (D. Md. 2020). Plaintiffs' requests for declaratory and injunctive relief, however, relate almost exclusively to "The State of Maryland's" policies and are not connected Defendant State officials.[14] *See, e.g.*, ECF No. 1 at pp. 33–37 (requesting this court enter declaratory judgment that "The State of Maryland social equity restrictions…"; "The State of Maryland numerical restrictions…"; "The State of Maryland 'lottery system'…"; "the State policies denying access to the METRC system…"; "The requirement of a 'detailed diversity statement' and business plan…"; "[T]he State policies allowing the sale of…" violate the Fourteenth Amendment and the dormant Commerce Clause).

To the extent Plaintiffs intend to bring their claims related to licensure against Defendant Tabatha Robinson, Executive Director of the MCA, *Ex parte Young* does not apply, because there is no alleged ongoing violation of federal law. The MCA has already completed

---

[14] The court acknowledges that Plaintiffs also request declaration that "selective enforcement of erroneous testing standards" violates their rights under the Fourteenth Amendment and the dormant Commerce Clause. (ECF No. 1 at ¶¶ 110(d), 111(d), 114(f).) To the extent this purports to assert an action against one or more Defendant State officials (including most obviously Defendant Kelley, Executive Director of the Maryland Alcohol, Tobacco, and Cannabis Commission; *see* ECF No. 30 at p. 30) and/or for ongoing violation of federal law, for reasons explained below, this is not sufficient to overcome State Defendants' 12(b)(1) challenges on standing. Therefore, the court need not address the *Ex parte Young* doctrine regarding this aspect of Plaintiffs' requested relief.

issuing first-round licenses. "No federal court may issue a declaratory judgment on past state action, where the action complained of and no other relief [*i.e.* injunctive relief] is available." *Int'l Coal. For Religious Freedom v. Maryland*, 3 F. App'x 46, 50 (4th Cir. 2001). Plaintiffs seek declaratory judgment that the licensure requirements, as applied in the first round, violated the Fourteenth Amendment and the dormant Commerce Clause; such relief is retrospective in nature.

State Defendants argue further that *Ex parte Young* does not apply to allow Plaintiffs' claim as against Wes Moore, in his official capacity as Governor of Maryland, and he is not a proper defendant to this action. (ECF No. 34-1 at pp. 10–11.) The court agrees. The Fourth Circuit has made clear that "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quotations omitted). Instead, "to be a proper defendant in an action to enjoin an allegedly unconstitutional state law, the governor must have 'a specific duty to enforce' that law." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (quoting *Waste Mgmt.*, 252 F.3d at 331). Plaintiffs neither allege nor argue that Governor Moore has a specific duty to enforce the CRA.

Regarding Plaintiffs' Count IV for unlawful Taking Without Just Compensation, State Defendants argue that "the Eleventh Amendment bars Plaintiffs' Takings Clause claim because a similar takings proceeding could be pursued in state court." (ECF No. 34-1 at p. 15.) The court agrees. "[T]he Eleventh Amendment bars Fifth Amendment taking claims against States *in federal court* when the *State's courts* remain open to adjudicate such claims." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014) (emphasis in original). The Fifth Amendment applies to the states through the Fourteenth Amendment. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 122 (1978). Article III, § 40, of the Maryland Constitution provides

22

in relevant part: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation[.]" *See Neifert v. Dep't of Env't,* 395 Md. 486, 516 n.33 (2006) (noting that "the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 40, of the Maryland Constitution have the same meaning and effect").

Accordingly, the Eleventh Amendment bars Plaintiffs' claims as against State Defendants MCA, the Maryland Alcohol, Tobacco, and Cannabis Commission, and the State of Maryland; and Governor Wes Moore is not a proper party to this action. For the sake of completeness, the court also addresses State Defendants' standing argument.

### 2. Standing

In their Motion to Dismiss, State Defendants argue that Plaintiffs lack standing to challenge: (1) the cannabis licensing criteria and process; (2) the shelf space requirements for cannabis products that licensed dispensaries offer for sale; and (3) the allegedly unlawful searches and seizures of hemp products in Maryland. (ECF No. 34-1 at pp. 16–20.) Defendants also separately argue that Plaintiffs Maryland Hemp Coalition and Ira Cooke fail to establish organizational standing or standing as a consumer, respectively. *Id.*at p. 21. As set forth above, Plaintiffs do not address Defendants' standing challenges in their opposition and thus concede them.[15]

By way of background, the Constitution extends the judicial power of Article III courts to "cases" or "controversies." U.S. CONST. art. III, § 2, cl. 1. The doctrine of standing, among others, "implements" this limit. *Carney v. Adams*, 592 U.S. 53, 58 (2020). "Article III standing is 'part and parcel of the constitutional mandate that the judicial power of the United States

---

[15] Defendants do not present a standing challenge specifically as to Count IV for Taking Without Just Compensation, and so the court's standing analysis is limited to Plaintiffs' standing as to Counts I through III for declaratory relief for violations of the Fourteenth Amendment and the dormant Commerce Clause. Regardless, as explained, *supra*, the Eleventh Amendment bars Plaintiffs' Count IV and so it shall not proceed for the reasons set forth earlier.

extends only to cases and 'controversies.'" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

To establish standing:

> First, the plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Dep't. of Educ v. Brown*, 600 U.S. 551, 561 (2023) (citations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 340. Important here, an "abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public," cannot establish an "injury in fact." *Carney*, 592 U.S. at 59.

Plaintiffs "must demonstrate standing 'with the manner and degree of evidence' required at the relevant 'stage[] of the litigation.'" *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (quoting *Lujan*, 504 U.S. at 561). Because Plaintiffs seek declaratory and injunctive relief,[16] they must establish an ongoing or future injury in fact. *See State of Maryland v. United States Dep't of Agric.*, 151 F.4th 197, 209 (4th Cir. 2025) (finding that "[p]rospective relief must instead be justified by prospective injury"); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (explaining that "[w]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of

---

[16] The court notes Plaintiffs seek monetary damages at Count IV. *See* footnote 15, *supra*.

future injury"); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citations omitted) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

a.   Plaintiffs Lack Standing to Challenge CRA Licensing Requirements

Plaintiffs' primary grievance is with the provisions of the CRA relating to applications for recreational cannabis licenses. In Counts I and II of the Complaint, they seek declaratory judgment that:

> A. The State of Maryland social equity restrictions upon licensure were and are in violation of the equal protection [and due process] requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.
>
> B. The State of Maryland numerical restrictions upon licensure were and are in violation of the equal protection [and due process] requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.
>
> C. The State of Maryland "lottery system" for licensure is and was in violation of the equal protection [and due process] requirements of the Fourteenth Amendment of the United States Constitution. The Plaintiffs further pray that the Court order appropriate injunctive relief.
>
> .            .            .
>
> F. The requirement of a "detailed diversity statement" and business plan as part of the licensing review process, without any oversight to prevent arbitrary or capricious determinations of eligibility, are in violation of the equal protection requirements of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further pray that appropriate injunctive relief be granted.

25

(ECF No. 1 at pp. 33–36.)  In Count III, Plaintiffs seek declaratory judgment that "Defendants, by restricting licensure in the manner set forth in Counts I and II of this Complaint. . . are in violation of the dormant commerce clause." *Id.* at p. 37.

The court must therefore determine whether Plaintiffs demonstrate a concrete or imminent, particularized injury in fact caused by the above-described aspects of the licensing system "over and above the abstract generalized grievance suffered by all citizens of [Maryland] who (if [Plaintiffs are] right) must live in a State subject to an unconstitutional [license] selection criterion." *Carney*, 592 U.S. at 59.  Plaintiffs do not make this showing; rather, their complained-of injury is precisely the type of generalized grievance described above.

In *Carney*, the Supreme Court found the plaintiff, a Delaware lawyer who identified as a political independent, lacked standing to challenge Delaware's requirement that judicial appointments to certain courts reflect a partisan balance between Democrats and Republicans because he had not applied for a judicial appointment.  592 U.S. at 61–63.  The Court determined that the plaintiff's "bare statement of intent alone"—that he "would apply for any judicial position"—was unavailing given the "context of a record that shows nothing more than an abstract generalized grievance." *Id*. at 66.  Drawing on its precedent "that an injury in fact requires an intent that is concrete," the Court contrasted the plaintiff in *Carney* with plaintiffs in other cases who unsuccessfully applied for a position affected by the challenged policy or showed they regularly applied for similar positions; the latter group of plaintiffs satisfied Article III's injury-in-fact requirement by showing concrete intent instead of "some day intentions." *Id*. at 64–66 (first citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995); then citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,* 508 U.S. 656, 666 (1993); and then citing *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)).

The Fourth Circuit, and this court, has also found plaintiffs failed to show an injury in fact when they sought to challenge an application process in which they had not participated. *See, e.g.*, *S. Blasting Servs., Inc. v. Wilkes Cnty., NC*, 288 F.3d 584, 595 (4th Cir. 2002) (finding plaintiffs could not demonstrate actual injury because they "have never even applied for a permit, much less been denied one"); *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 163 (4th Cir. 2023) (holding plaintiffs failed to establish Article III injury because they did not allege they applied to the contested program).

The Supreme Court is clear, however, that Plaintiffs need not "translate" their desire for the license "'into a formal application' where that application would be merely a 'futile gesture.'" *Carney v. Adams*, 592 U.S. 53, 66 (2020) (quoting *Teamsters v. United States*, 431 U.S. 324, 365–366 (1977)). Plaintiffs can still show injury-in-fact if they were "able and ready" to apply and that "a discriminatory policy" prevented them from doing so on equal footing with competitors. *Jensen v. Maryland Cannabis Administration*, 719 F. Supp. 3d 466, 475 (D. Md. 2024), *aff'd,* 151 F.4th 169 (4th Cir. 2025), *cert. denied sub nom. Jensen v. Md Cannabis Admin*, No. 25-766, 2026 WL 490640 (U.S. Feb. 23, 2026) (citing *Gratz*, 539 U.S. at 262).

In *Jensen,* this court found the plaintiff had standing to challenge the CRA's licensing requirements without having submitted an application to the lottery because she demonstrated she did not qualify as a social equity applicant. There, the plaintiff had submitted a "verification request" for certification as to whether she met the social equity criteria; and the MCA denied this request. This court found the plaintiff was not required to then submit the formal application that was available only to those who successfully verified their social equity eligibility. *Jensen*, 719 F. Supp. 3d at 475, 477 n.8.[17] This court additionally noted that the

---

[17] The *Jensen* court explained: "Plaintiff and Defendants agreed at the hearing that Plaintiff was unable to *submit* the formal application without first receiving social equity applicant verification, even if she could have *begun* that application without the verification. Plaintiff was well aware that she would not receive social equity verification, and she was not required to begin an application that would have obviously been a 'futile gesture' in order to establish injury." 719 F. Supp. 3d at 475 (emphasis in original). The court further made clear that Jensen had submitted a (pre-application) social equity verification request, which was declined: "[I]n Plaintiff's

27

plaintiff was "a successful retail cannabis professional who has applied for cannabis licenses in several states and was easily 'ready and able' to provide the business plans and other documentation the application required, had such an endeavor not been obviously doomed to fail." *Id*.

Here, no facts are alleged that any Plaintiff applied for a Maryland recreational cannabis license. Instead, Plaintiffs allege they are "are willing, ready and able to apply [if licences] are granted via reasonable and objective criteria." (ECF No. 1 ¶ 69.) Plaintiffs acknowledge that to receive an application, there are two stages: first, qualify as a social equity applicant; and second, receive a license through the lottery system. *Id*. ¶ 36. But Plaintiffs do not allege any of them sought to qualify as a social equity applicant. Instead, they submit that "Plaintiffs have little or no prospect of obtaining a license in the first round of 'social equity' licensing." *Id*. ¶ 47. There are no allegations that any Plaintiff submitted a first-round social equity application or a final application. There are no allegations of any specific steps any Plaintiff took to qualify for a license.

Another troubling aspect of Plaintiffs' Complaint is the generalized nature of its allegations. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The Complaint lacks specific allegations about each Plaintiff's ability to qualify as a social equity applicant; Plaintiffs merely allege they had "little or no prospect of obtaining a license in the first round of 'social equity' licensing." (ECF No. 1 at p. 47.)

Regarding the retailer Plaintiffs, Plaintiffs aver:

> The Plaintiff retailers were and are willing to be licensed as recreational cannabis dispensaries if only for the purposes of continuing to sell their Federally legal Hemp Products, but the

'verification request,' she certified that she had no address to submit from a disproportionately impacted area, and the only academic transcripts she submitted were those from California State University at Long Beach." *Id.* at 477 n.8.

> new Act made no provision for them to receive any licenses on a provisional, expedited or priority basis, nor did it give the retailers any grace period within which to even attempt to get a license. Instead, it shut them down without recourse.

(ECF No. 1 ¶ 62.) Plaintiffs thus suggest that the social equity applicant requirement (or any other of the challenged license application requirements) does not pose a barrier to licensure; rather, they did not apply because the CRA did not allow them to receive the licenses on "a provisional, expedited, or priority basis." *Id.*

Plaintiffs also fail to make clear which of them was "ineligible to apply" and why. While Plaintiffs are not required to have applied for a license to show standing, as set forth above, Plaintiffs must at the very least show they were "able and ready" to apply for licensure, and the allegedly discriminatory nature of the licensing criteria prevented them from doing so. As noted by State Defendants, only one individual Plaintiff asserts that it was statutorily ineligible for a license, South Mountain Microfarm, LLC. (ECF No. 34-1 at p. 15 n.10.) The Complaint alleges "Plaintiff South Mountain Microfarm, LLC . . . cannot be granted a retail dispensary license due to diversity and social equity limitations." (ECF No. 1 ¶ 101.) Even here, the allegation is too generalized, too paltry to constitute an injury in fact. In sum, Plaintiffs fail to make a clear, Plaintiff-specific showing that each of them was able and ready to apply for licensure but did not do so because of the CRA's social equity applicant, numerical, or lottery requirements.

As for the second round of licensing, as set forth above, the application criteria have not been set. MD. CODE ANN., ALC. BEV. § 36-404(e)–(g). Plaintiffs admit that Senate Bill 215 does not alter this:

> [T]he General Assembly has passed new legislation as of 2025 re-affirming that the second round of licenses, depending upon the results of a study as to whether further social equity programs are needed, will either be awarded to minority and women owned businesses by lottery, or again, by a random lottery for the remaining licenses available.

29

(ECF No. 1 ¶ 50.) Plaintiffs do not allege any efforts to apply for the second round of licensing; nor could they inasmuch as the MCA has not yet determined the application criteria for the second round. *See Menders*, 65 F.4th 157 at 163 (finding plaintiffs lacked standing when they had not applied or even alleged they were prevented from participating in the program).

Plaintiffs lack standing to challenge the requirements of the CRA licensing process, as none of them applied for a license in the first round and they fail to show they were otherwise "able and ready" to do so as the applicable precedent describes. *See Jensen*, *supra*. Any effort to challenge the requirements for second-round applicants is premature, as the MCA has not yet determined what, if any, remedial measures will be employed in the lottery process for second round licenses.

    b. <u>Plaintiffs Lack Standing to Challenge the CRA's Market Share Requirement</u>

Plaintiffs also lack standing to challenge the CRA's requirement that licensed cannabis dispensaries "ensure that at least 25% of cannabis and cannabis products in the dispensary are from social equity licensees and growers and processors that do not share common ownership with the dispensary." MD. CODE ANN., ALC. BEV. § 36-410(a)(3). Plaintiffs repeatedly aver that they sell hemp, as opposed to cannabis, products. *See, e.g.*, ECF No. 1 ¶ 22 ("It is hemp, rather than cannabis (which has much higher levels of Delta-9 THC) that is grown by the Plaintiff farmers in this case.")

Plaintiffs fall far short of demonstrating a concrete, imminent injury from this market share requirement. First, as discussed above, Plaintiffs do not allege they are currently licensed dispensaries; nor do they allege they sought to become licensed. Second, Plaintiffs repeatedly aver that they do not sell cannabis or cannabis products; and they do not allege they sought to place their products in licensed dispensaries and the CRA shelf requirement prevented them from doing so. Therefore, Plaintiffs have not alleged facts sufficient to establish standing to challenge the CRA's market share requirement.

c.    Plaintiffs Lack Standing to Challenge Hemp Flower Searches and Seizures

Plaintiffs also fail to establish standing to challenge the alleged Hemp Flower searches and seizures. In pertinent part, Plaintiffs aver: "[s]everal hemp retailers in Baltimore City have been the subject of search and seizure warrants, and in at least one case, criminal charges for the sale of 'cannabis' based upon testing of the seized product." (ECF No. 1 ¶ 93.) Notably, Plaintiffs do not allege that any Plaintiff or Maryland Hemp Coalition member was a target of any such search and seizure. Instead, they insist, "Plaintiffs who engage in the sale of hemp flower have a reasonable apprehension that they may be targeted for similar unlawful searches, seizures and enforcement actions, and seek an injunction and declaratory judgment that such seizures are unlawful." *Id*. ¶ 98. This does not come close to demonstration of concrete, particularized, imminent injury from law enforcement searches.

d.    Plaintiff Ira Cooke Lacks Standing[18]

The Complaint contains the following allegations regarding Plaintiff Ira Cooke:

> IRA COOKE is an individual who is a retired attorney and a cancer survivor who has suffered from digestive and appetite problems since the time of suffering esophageal cancer several years ago. He first became aware of the medicinal properties of Hemp Products during that ordeal, and has been a regular customer of the retail store operated by J. WYAND, INC., d/b/a SIMPLE PLEASURES. As a consumer of the product in question, he values friendly customer service, knowledgeable staff, and competitive pricing, which he has found at retail hemp establishments but has not found at state licensed cannabis dispensaries. He asserts his right as a consumer to buy from the retail stores of his choosing, rather than of the State of Maryland's choosing.

(ECF No. 1 ¶ 13.)

"When the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to

---

[18] The court notes that Plaintiffs proposed amended complaint seeks to remove Plaintiff Ira Cooke from this action at his request. (ECF No. 44 at p. 2; ECF No. 44-1 at p. 2.) Because the original Complaint is still the operative pleading at this moment, the court addresses State Defendants' argument that Plaintiff Cooke lacks standing.

establish." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493–94 (2009). To meet this substantially more difficult burden, a plaintiff must "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). A plaintiff does not "establish the required burden for standing purposes" when he rests on allegations of "minor inconveniences, additional costs and logistical hurdles," as these "do not constitute an 'absolute deprivation' of the plaintiff['s] rights." *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 489–90 (4th Cir. 2025).

Here, Plaintiff Cooke is not the object of the CRA, as the CRA regulates sellers, not consumers, of cannabis. Further, Plaintiff Cooke's alleged injury is that he cannot shop at the store of his choosing and, instead, must shop at stores with higher prices that provide what he apparently views as worse customer service. These inconveniences and additional costs are not an injury sufficient to establish standing. *Id*. Further, as explained above, Simple Pleasures does not allege it sought a license; therefore, Plaintiff Cooke's alleged injury is even further attenuated from the CRA than that of Plaintiff Simple Pleasures. Moreover, the Complaint contains no allegation that Plaintiff Cooke sought METRC access or was subject to a search and seizure of hemp flower. Accordingly, Plaintiff Cooke lacks standing to assert claims related to the CRA, METRC, or searches for/seizures of hemp products.

e.   Plaintiff Maryland Hemp Coalition, Inc., Lacks Standing

Membership organizations, like Plaintiff Maryland Hemp Coalition, Inc., may establish standing based on their own injury or based on their members' injuries; the latter standing basis is known as representational or associational standing. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

To show standing based on its own injury, an association or member organization "must satisfy the usual standards for injury in fact, causation, and redressability that apply to

individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)). "Like an individual, an organization may not establish standing simply based on the 'intensity of the litigant's interest.'" *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,* 454 U.S. 464, 486 (1982)). Instead, the challenged actions must "directly affect[] and interfere[] with [the organization's] core business activities." *Id.* at 395. The Fourth Circuit has "reaffirmed that a plaintiff has suffered an organizational injury if the challenged policy or practice frustrated both its purpose and caused a drain on its resources." *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, 843 F. App'x 493, 495 (4th Cir. 2021). The Supreme Court has warned, however, that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Hippocratic*, 602 U.S. at 394.

Alternatively, a member organization may establish standing through its members' injuries. *Students for Fair Admissions*, 600 U.S. at 199. But, importantly, to establish associational standing, "an organization must 'make specific allegations establishing that at least one identified member has suffered or would suffer harm.'" *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

Plaintiff Maryland Hemp Coalition, Inc., alleges it is "a member organization to forward the cause of farmers of hemp in the State of Maryland." (ECF No. 1 ¶ 4.) As for injury, it avers the "hemp grown by these farmers is used in many of the products sold by the various retailer Plaintiffs in this case. The diminution of the business of those retailers will also diminish the business of the hemp farmers of Maryland, contrary to the mission of the Maryland Hemp Coalition, Inc." *Id.*

Maryland Hemp Coalition's allegations are insufficient to establish standing based on its own alleged injuries or those of its members. It does not allege both a frustration of its purpose and a related drain of its resources (*People for Ethical Treatment of Animals, Inc.*, *supra*); instead, its alleged harm amounts to a "mere disagreement with the policy decisions of the Maryland legislature, which is insufficient to meet the constitutional threshold for an injury in fact." *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 362 (2020). Additionally, for the reasons discussed above, the other Plaintiffs in this action lack standing to challenge the CRA's licensing requirements, the other allegedly unconstitutional provisions of the CRA, and the recent enforcement actions against hemp growers; and Maryland Hemp Coalition lodges no specific allegations sufficient to demonstrate that at least one non-Plaintiff member has standing to challenge same.

"It is well established that standing is a threshold jurisdictional issue that must be determined first because without jurisdiction the court cannot proceed at all in any case." *Covenant Media of N.C., L.L.C. v. City of Monroe, N.C.*, 285 F. App'x 30, 34 (4th Cir. 2008) (citations omitted). For the reasons set forth above, accepting Plaintiffs' allegations as true (including all reasonable inferences therefrom), the court determines that Plaintiffs do not have standing to challenge the constitutionality of the CRA's licensure application, shelf-space requirements, or the recent hemp flower enforcement actions.[19, 20]

**B. Plaintiff's Motion to Amend**

Plaintiffs seek leave to file a first amended complaint for several reasons: (1) to supplement and clarify certain statements in the original Complaint in light of the court's ruling

---

[19] The court notes that State Defendants do not address Plaintiffs' standing to pursue their Takings Clause claim (Count IV) asserting that "Defendants have unlawfully prevented the Plaintiffs from pursuing a lawful business, in violation of their rights, depriving Plaintiffs of a valuable property right in their businesses and incomes[.]" (ECF No. 44-1 at p. 42.) As this claim will be dismissed based on the Eleventh Amendment, the court need not address Plaintiffs' standing as to Count IV of the Complaint. *See also,* footnote 15, *supra.*

[20] As the Complaint will be dismissed on the grounds discussed above, the court declines to reach the balance of State Defendants' arguments in the Motion to Dismiss.

on Plaintiffs' Motion for Temporary Injunction and Preliminary Injunction, and in light of State Defendants' Motion to Dismiss; (2) to correct certain statements concerning the state of the law in the Complaint because they "are no longer accurate"; (3) to include additional parties who have asked to be named Plaintiffs since learning of this action; and (4) to remove a named Plaintiff at his request.  (ECF No. 44 ¶ 1–4.)  State Defendants oppose the Motion to Amend on grounds of futility, asserting Plaintiffs' proposed amendments "do not cure the jurisdictional bars to Plaintiffs' claims nor Plaintiffs' failure to state a claim upon which relief can be granted."  (ECF No. 45 at p. 2.)  As noted, Plaintiffs did not file a reply to State Defendants' opposition.

Leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  A court is also permitted to deny as futile a request for leave to amend where the "proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); *see Tyner v. Maryland*, No. CV DLB-23-1474, 2024 WL 3890410, at *4 (D. Md. Aug. 21, 2024) (finding that "[b]ecause [the plaintiff's] proposed amended complaint would be barred by sovereign immunity, leave to amend would be futile."); *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 598 (D. Md. 2022) (holding "[w]hile a challenge to a plaintiff's standing is properly considered under Rule 12(b)(1), it follows that a district court may also deny leave to amend as futile where the proposed amended complaint fails for lack of standing").

The court agrees with State Defendants that the proposed amendments to Plaintiffs' Complaint do not cure the above-discussed jurisdictional defects of sovereign immunity and standing raised in the Motion to Dismiss.  Moreover, as previously noted, in their Motion to Amend, Plaintiffs seemingly agree that their proposed amended pleading does not cure, and is

not intended to cure, any problem with their Complaint that the Motion to Dismiss identifies. Instead, Plaintiffs explain that they do "not believe[] that the proposed changes will make a substantial difference to those arguments, as [the proposed amendments] simply add more detail and clarify some of the facts which may have been unclear in the original pleading, and update certain statements as to the existing state of the of law." (ECF No. 44 at ¶ 5; *see* footnote 13, *supra*.) Notwithstanding Plaintiffs' statement, the court addresses the proposed amended pleading below.

### 1. *Sovereign Immunity*

As an initial matter, the proposed amended complaint does not assert any new claims against State Defendants and does not alter existing Counts I through IV in any way. (ECF No. 44-1 ¶¶ 107–116.) All claims continue to be asserted pursuant to § 1983. As addressed above, these claims are barred by the Eleventh Amendment. The proposed amendments do not offer any new facts or allegations suggesting State Defendants are not immune from suit or that any of the three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state apply here. Therefore, Plaintiffs' Motion to Amend is properly denied on this basis. *See Kendrick v. Cavanaugh,* No. CIV. CCB-10-2207, 2011 WL 2837910 (D. Md. July 14, 2011), *aff'd*, 470 F. App'x 194 (4th Cir. 2012) (denying the plaintiff's motion for leave to amend because "[a]mendment of the complaint . . . would be futile [as] the defendants and the State of Maryland [were] entitled to immunity from [the plaintiff's] suit even under the proposed amended complaint"). Nonetheless, the court next addresses whether Plaintiffs' proposed amendments cure Plaintiffs' lack of standing as to Counts I through III.

### 2. *Amendment to Parties and Assertion of Futility*

Plaintiffs propose amending their Complaint to add four new Plaintiffs: (1) Paradise Smoke, LLC; (2) The Bean Team Company, LLC; (3) TJ Wellness, LLC d/b/a Your Best Buds; and (4) Nicholas Patrick. (ECF 44-1 at pp. 2–3.) State Defendants argue "Plaintiffs do not

offer any proposed factual allegations that state a claim upon which relief could be granted as to these four new Plaintiffs." (ECF No. 45 at p. 3.)

Where a plaintiff seeks to amend the operative pleading by adding another plaintiff, the court must consider not only the liberal amendment provisions of Rule 15(a), but also the "more specific joinder provisions of Rule 20(a)." *Hinson v. Northwest Fin., S. Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001). In pertinent part, Rule 20 allows plaintiffs to join in one action if they jointly assert a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." FED R. CIV. P. 20(a)(1)(A). "Courts should 'entertain[] the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 1256499, at *5 (D. Md. Mar. 17, 2025) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 734 (1966)).

While the newly proposed Plaintiffs may assert a right to relief "arising out of the same transaction or occurrence" in satisfaction of Rule 20, their addition would still be futile under Rule 15(a) because they similarly lack standing to bring suit. Proposed Plaintiffs Paradise Smoke, LLC, The Bean Team Company LLC, and TJ Wellness, LLC[21] are Maryland limited liability companies that retail hemp products in Maryland, without a Maryland State license to do so. (ECF No. 44-1 ¶ 13.)

Proposed Plaintiff Nicholas Patrick is an individual formerly in the retail hemp business. Plaintiffs allege Patrick was "forced out of business by the 2023 Cannabis Reform

---

[21]Defendants allege that as of October 2, 2025, proposed Plaintiff TJ Wellness, LLC, was not in good standing as a Maryland LLC and thus, is ineligible to bring suit in federal court. *See United Corrosion Control, LLC,* 2023 WL 8712048, at *2–3, *supra*. The court conducted a search for TJ Wellness, LLC in the Maryland Business Entity Search of which it is entitled to take judicial notice as a government public website, https://egov.maryland.gov/businessexpress/entitysearch (last visited March 26, 2026) [https://perma.cc/SEP9-8KKK]. The search results indicate that Plaintiff is currently in good standing, which has retroactive application for this purpose. As such, TJ Wellness, LLC is not precluded from being a Plaintiff in this action on that basis.

Act, to such an extent that [he was] unable to reopen [his] business[] after [an] injunction was issued by the Circuit Court for Washington County."[22]  *Id*. ¶ 13.a.

As to proposed Plaintiffs The Bean Team Company, TJ Wellness, and Nicholas Patrick, the proposed amended complaint does not include any allegations that they were eligible for a license, attempted to apply for a license to sell their hemp products, or had their stores searched or products seized by law enforcement.  Therefore, they also fail to adequately allege an injury-in-fact sufficient to confer standing for the reasons set forth in the court's earlier discussion of standing.

As for proposed Plaintiff Paradise Smoke, Plaintiffs allege that submitting a license application would have been "futile" because:

> South Mountain Microfarm, LLC, J. Wyand, Inc., The Southern Maryland Experience, LLC, Straf, LLC, Endo Production Company, LLC, and Paradise Smoke, LLC, had no prospect of ever being granted a license in the first round of licensing applications, because none of them could meet the social equity requirements set forth by the State regulation, due to not residing in the correct zip code during the correct periods of time, not attending the correct schools, and in the case of J. Wyand, Inc., and Endo Productions, LLC, being an out of state entity.  Any application submitted by those entities would have been rejected out of hand as not qualified under the regulations devised by the Office of Social Equity. Therefore, for any of these companies to have applied would be futile and a waste of both the time in applying and a waste of the $5000 required for an application fee, which is non-refundable even if the application is rejected. All of these companies were ready, willing, and able to apply for a license if there had been any way for them to qualify for a license.

(ECF No. 44-1 at p. 21.)

In their opposition, State Defendants assert that Plaintiffs' proposed amendments concerning the futility of applications for recreational cannabis licenses and the alleged seizure of hemp products still fail to establish standing and thus, are futile.  (ECF No. 45 at pp. 6–9,

---

[22] Plaintiffs also assert the same facts as to named Plaintiff Daniel Simmonds, seemingly correcting the failure to include information as to Mr. Simmonds in "The Parties" section of the operative Complaint. *See* footnote 4, *supra.*

11–12.)  As discussed *supra,* Plaintiffs can show injury-in-fact necessary to confer standing if they allege they were "able and ready" to apply, and that "a discriminatory policy" prevented them from doing so on equal footing with competitors.  *Jensen*, 719 F. Supp. 3d at 475 (citing *Gratz*, 539 U.S. at 262).  The proposed amendment sets forth that these specific proposed Plaintiffs were "ready, willing, and able" to apply but could not do so because they could not meet "the social equity requirements set forth by the State regulation[]," specifically as to residency and schooling requirements.

As the Fourth Circuit noted in its discussion of this court's holding in *Jensen*: "*Anyone* from *any* state can qualify under any of the criteria of a social equity applicant—including the in-state institution [of higher education] requirement."  *Jensen v. Maryland Cannabis Admin.*, 151 F.4th 169, 176 (4th Cir. 2025), *cert. denied sub nom. Jensen v. Md Cannabis Admin*, No. 25-766, 2026 WL 490640 (U.S. Feb. 23, 2026) (emphasis in original).  In light of the Fourth Circuit's assertion that the criteria to qualify for a social equity applicant are not discriminatory, Plaintiffs cannot contend that the requirements constituted a discriminatory policy that prevented them for applying for licenses.  Accordingly, Plaintiffs fail to allege that such applications would have been "futile."[23]

Because the additional proposed Plaintiffs and proposed amendments do not affect this court's analysis as to the jurisdictional defects of Plaintiffs' Complaint, Plaintiffs' Motion to Amend will be denied.

---

[23] Plaintiffs' proposed amendments include discussion of a recent decision from the Court of Appeals for the Second Circuit where, Plaintiffs state, the court held "under a similar scheme, the plaintiffs had standing and [] the dormant commerce clause likely applied to bar legislation protecting in-state businesses." (ECF No. 44-1 at p. 34.)  That decision is not binding on this court.  Regardless, as State Defendants correctly note, the Second Circuit concluded that the plaintiffs (LLCs alleging that New York's procedures for issuing cannabis dispensary licenses violated the dormant Commerce Clause) lacked "standing to challenge a prior licensing round in which they had not applied; the court only found standing for a future licensing round for which the plaintiffs had applied and for which eligibility criteria had been set." (ECF No. 45 at p. 8.); *see Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47 (2d Cir. 2025).  As such, the facts of that case are materially different from the facts presented here; it is inapposite.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, State Defendants' Motion to Dismiss

(ECF No. 34) shall be granted[24] and Plaintiffs' Motion to Amend (ECF No. 44) shall be denied.

/S/

March 27, 2026                                                    _____

Julie R. Rubin
United States District Judge

---

[24] State Defendants' request that Plaintiffs' Complaint be dismissed with prejudice. The Fourth Circuit has held that dismissals for lack of subject-matter jurisdiction must be entered without prejudice. *Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). Accordingly, the Complaint will be dismissed without prejudice.